UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RODNEY LANIER,

                                 Plaintiff,

v.                                                  1:26-cv-0419
                                                  (GTS/CBF)

JOHN H. LARRABEE, et al.,

                                 Defendants.

_____

APPEARANCES:

RODNEY LANIER
Plaintiff, *pro se*
469 Orange Street
Albany, NY 12206

**CARLA B. FREEDMAN**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

**I.      INTRODUCTION**

The Clerk has sent to the Court for review a civil complaint submitted by *pro se* plaintiff

Rodeny Lanier ("Plaintiff").  Dkt. No. 1.  Plaintiff has not paid the filing fee for this action and

seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 3.

**II.     IFP APPLICATION**

Plaintiff declares he is unable to pay the filing fee.  *See id*.  Upon review, his application

demonstrates economic need.  Accordingly, Plaintiff's IFP application is granted.[1]

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### III.    BACKGROUND

Plaintiff commenced this action by filing a complaint on March 17, 2026, utilizing this District's form civil rights complaint pursuant to 42 U.S.C. § 1983.  *See generally* Dkt. No. 1. Plaintiff's minor daughter, S.L., is also listed as a plaintiff.  *Id.* at 1.  The complaint identifies three defendants: John H. Larrabee, City of Albany NY Police Officer; Gregory R. Myers, Police Officer City of Albany, NY; and Nathaniel Pendleton, Supervisor APD, Sgt. of the City of Albany, NY Police.  *Id*. at 1-2.

The following facts are drawn from the complaint.  Plaintiff and S.L. reside at 469 Orange Street, located in the City of Albany, New York.  *Id*. at 2.  On March 17, 2023, at approximately 5:51 p.m., Plaintiff received a text message from S.L., who was home alone, informing him that Albany police officers were "banging" on the front and back doors and had "picked the resident entry lock to the house."  *Id*. at 2.  S.L. was "scared" and she "hid in her bedroom on the second floor."  *Id*.  Plaintiff "immediately" went to 469 Orange Street but the police officers were no longer there.  *Id*. at 3.

S.L. informed Plaintiff that the police officers had entered their house and "yelled commands for her to come out with her hands up."  *Id*. at 3.  The police officers were "pointing their weapons at [S.L.] and shining bright flashlights into her face causing her extreme discomfort and anxiety."  *Id*.  The police officers "sat her down," asked S.L. a "series" of questions about Plaintiff, and "began to illegally search" Plaintiff's house.  *Id*.  "After conducting the illegal search and entry," the "police left without further incident."  *Id*.

Defendants entered and searched Plaintiff's home without a warrant and without consent. *Id*. at 4.  "There was no evidence or indication that anyone residing at 469 Orange St. was a suspect or involved in any alleged shooting that had occurred outside of plaintiff's residence."

*Id*. at 3.  Defendants entered and searched Plaintiff's home "only after defendant Pendleton had questioned [Plaintiff's] neighbor as to who resided at [Plaintiff's] home." *Id*.

The next day, Plaintiff "went to Division 2 to find out why a warrantless entry and illegal search of [his] home had occurred" and "got the report," which, contained numerous redactions. *Id*. at 3.  "Plaintiff read the report and observed that it was defendant Pendleton who had ordered the defendants to enter into Plaintiff's home" on March 17, 2023.  *Id*. at 4.  The complaint alleges the March 17, 2023, search was "an act of payback and reprisal" because Plaintiff had previously complained that he had been "racially profiled" and arrested for possession of marijuana and possession of a fishing knife.  *Id*. at 4-5.

The complaint lists three causes of action: (1) unlawful entry in violation of the Fourth Amendment; (2) unlawful search in violation of the Fourth Amendment; and (3) retaliation in violation of the First Amendment.  *Id*. at 5.  Plaintiff seeks compensatory and punitive damages. *Id*. at 6.

## IV.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Fed. R. Civ. P. 8(d).  Further, Rule 10 provides in pertinent part that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations

4

contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

To state a valid claim under Section 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

### A.    Claims on Behalf of Minor Child

Although federal law affords parties a statutory right to plead and conduct their own cases, 28 U.S.C. § 1654, that statute does not permit "unlicensed laymen to represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks omitted).  It is well-settled that a non-attorney parent cannot appear on behalf of his or her child.  *Berrios v. NYCHA*, 564 F.3d 130, 133 (2d Cir. 2009); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self . . . a lay person may not represent a corporation or a partnership or appear on behalf of his or her own child.").

Here, because Plaintiff is proceeding *pro se*, he cannot file this action on behalf of his minor child or represent her in this matter.  Therefore, it is recommended that any claims on behalf of the minor child be dismissed without prejudice.

### B.    Fourth Amendment Unlawful Entry and Unlawful Search Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Police officers need 'either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home' or its curtilage."  *Amara v. Vill. of Afton*, No. 3:25-CV-01617 (BKS/MJK), 2026 WL 1693950, at *5 (N.D.N.Y. June 11, 2026) (quoting *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014) (other citation omitted)).  When a warrantless entry is made, the burden lies with the government to establish an exception to the warrant requirement.  *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).  "The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe

that there was an urgent need to render aid or to take action" without securing a warrant. *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025) (internal citation omitted).

Here, construing the *pro se* complaint liberally, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Plaintiff alleges Defendants entered and searched Plaintiff's home on March 17, 2023, without consent, without a warrant, and without any emergency circumstance in violation of the Fourth Amendment. *See* Dkt. No. 1 at 3-5. Accordingly, the Court recommends that Plaintiff's Fourth Amendment claims against Defendants survive initial review and require a response. In so recommending, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### C.    First Amendment Retaliation Claims

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quotation omitted). To state a First Amendment retaliation claim, a plaintiff must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *see also Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024).

A plaintiff must provide more than mere conclusory allegations; he must allege facts that plausibly support an inference of the requisite causal connection between the protected speech and adverse action. *See Grossi v. City of New York*, No. 08-CV-1083, 2009 WL 4456307, at *7 (E.D.N.Y. Nov. 4, 2009) (collecting cases where plaintiffs failed to allege sufficient facts to render any causal connection plausible), *report and recommendation adopted*, 2009 WL 4456307 (E.D.N.Y. Nov. 30, 2009). "[I]n considering whether there is a causal connection between the

protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action." *Hendricks v. Mallozzi*, No. 9:20-CV-1035 (MAD/ML), 2022 WL 1129887, at *4 (N.D.N.Y. Jan. 14, 2022), *report and recommendation adopted*, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022).

Here, construing the *pro se* complaint liberally, *see Sealed Plaintiff*, 537 F.3d at 191, the complaint alleges Defendants entered and searched his home on March 17, 2023, for retaliatory reasons. Dkt. No. 1 at 3-5. Even assuming Plaintiff sufficiently alleges that he engaged in protected speech, *see Jarvis v. Glynn*, No. 5:25-CV-01168 (BKS/ML), 2026 WL 1328396, at *7 (N.D.N.Y. May 13, 2026), and suffered an adverse action, *see Chavis v. Struebel*, 317 F.Supp.2d 232, 238 (W.D.N. Y Mar. 29, 2004), Plaintiff's retaliation claim is too conclusory to state a violation of the First Amendment. *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone . . . ."). "Without any non-conclusory allegations that the [protected speech] and the wrongful conduct alleged are causally connected, [Plaintiff's] retaliation claims are little more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Herbert v. Raczkowski*, 24-CV-0485, 2024 WL 3694215, at *8 (W.D.N.Y. Aug. 5, 2024) (quoting *Iqbal*, 556 U.S. 678 (2009)); *see, e.g.*, *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at *7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim).

Accordingly, the Court recommends dismissing Plaintiff's First Amendment retaliation claims without prejudice and with leave to amend for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. 1915e(2)(B)(ii);

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended pleading should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into any amended pleading by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendants and must demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further

**RECOMMENDED** that any claims on behalf of the minor child, S.L., be dismissed without prejudice; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment unlawful entry and unlawful search claims against Defendants Larrabee, Myers, and Pendlelton survive *sua sponte* review and require a response; and it is further

**RECOMMENDED** that Plaintiff's First Amendment retaliation claims be dismissed without prejudice and with leave to amend; and it is further

**ORDERED** that the Clerk of the Court provide Plaintiff with a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in

accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  June 24, 2026
          Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

---

[2] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2026 WL 1693950
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles Paul AMARA, Plaintiff,

v.

VILLAGE OF AFTON and Officer Justin Davy, in
His Official and Individual Capacities, Defendants.

3:25-cv-01617 (BKS/MJK)
|
Signed June 11, 2026

**Attorneys and Law Firms**

Plaintiff pro se: Charles Paul Amara, Afton, NY 13730

For Defendants: Paul G. Lyons, Sugarman Law Firm, LLP,
211 West Jefferson Street, Suite 20, Syracuse, NY 13202

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge

## I. INTRODUCTION

**\*1** Plaintiff pro se Charles Amara brought this action under
42 U.S.C. § 1983 against Defendants Village of Afton and
Afton Police Officer Justin Davy, (Dkt. No. 8, ¶¶ 10, 35),
in the Supreme Court of New York, County of Chenango on
October 27, 2025. (Dkt. No. 1-2, at 1). Defendants removed
this matter on November 18, 2025, and Plaintiff amended his
complaint as of right on December 4, 2025. (Dkt. Nos. 1, 8).
His amended complaint alleges multiple constitutional claims
and "supplemental New York State-law claims" arising from
his arrest on May 7, 2025. (*See* Dkt. No. 8). Defendants move
to dismiss Plaintiff's amended complaint under Federal Rules
of Civil Procedure 8 and 12(b)(6). (Dkt. No. 9). The motion
has been fully briefed. (Dkt. Nos. 9, 10, 15). For the following
reasons, the Court grants Defendants' motion.

## II. FACTS [1]

[1] These facts are drawn from the amended complaint.
(Dkt. No. 8). The Court assumes the truth of,
and draws reasonable inferences from, the well-
pleaded factual allegations, *see Lynch v. City of
New York*, 952 F.3d 67, 74–75 (2d Cir. 2020),
but does not accept as true any legal conclusions

asserted therein, *see Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).

Plaintiff alleges that on May 7, 2025, Officer Davy "pursued
[Plaintiff] while [he] was in [his] private conveyance from
Caswell Street to [his] private residence knowingly using
emergency lights without warrant, probable cause, or exigent
circumstance." (Dkt. No. 8, ¶ 24). According to Plaintiff, "the
record does not reflect that [he] was a statutory 'person,'
'driver,' 'chauffer,' or 'operator' as defined or intended under
any State regulatory or penal provisions." (*Id.* at ¶ 17). In
addition, Plaintiff claims that he "had and ha[s] no lawful duty
to register [his] private conveyance with the State of New
York or any of its agencies when exercising a private right and
not engaging in regulated commercial activity." (*Id.* at ¶ 23).

Following the pursuit, Officer Davy "entered [Plaintiff's]
private curtilage without a warrant, without [his] consent
and without any emergency circumstance." (*Id.* at ¶ 25).
When Officer Davy approached, Plaintiff was "on [his]
private property," "unarmed and not engaging in any criminal
activity." (*Id.* at ¶ 26). Officer Davy then "drew and pointed
a loaded firearm at [Plaintiff]," (*id.* at ¶ 27), and arrested
him after he declined to provide his name," (*id.* at ¶
30). Plaintiff "was handcuffed, searched, [and] transported
to the Chenango County Sheriff's Office," where he was
processed and detained. (*Id.* at ¶ 31). Officer Davy issued
Plaintiff "several civil traffic citations related to the same
incident." (*Id.* at ¶ 32). "A criminal case was commenced
against [Plaintiff] in a local town court based on the same
incident." (*Id.* at ¶ 33). Plaintiff asserts that these events
caused "emotional distress to [him] and to [his] family." (*Id.* at
¶ 34). Plaintiff asserts constitutional claims for unreasonable
seizure, unlawful entry onto private curtilage, excessive force,
false arrest, retaliatory initiation of criminal process, and
"abuse of authority." Plaintiff also asserts "supplemental New
York State law claims," incorporating the claims from a
"Notice of Claim" he filed with the Village on July 17,
2025." (*Id.* at ¶ 71).

## III. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 8(a)(2)
**\*2** Federal Rule of Civil Procedure 8(a)(2) provides, inter
alia, that "[a] pleading that states a claim for relief must
contain a short and plain statement of the claim showing that
the pleader is entitled to relief." "The statement should be
plain because the principal function of pleadings under the
Federal Rules is to give the adverse party fair notice of the

2026 WL 1693950

claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,' " *Mayor of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV. DISCUSSION

### A. Motion to Dismiss - Federal Rule of Civil Procedure 8(a)(2)

Defendants move to dismiss Plaintiff's complaint under, inter alia, Federal Rule of Civil Procedure 8(a)(2). Defendants argue that "the allegations ... do not provide Defendants

with any factual information regarding the specifics or the circumstances confronted by Davy on May 7, 2025." (Dkt. No. 9-2, at 8).

Here, although Plaintiff's pleading is sparse, it identifies claims based on federal law directed at specific defendants, and it supports those claims with some factual allegations. This is enough to give Defendants fair notice of the claims Plaintiff asserts. *See Rissetto v. County of Clinton*, No. 15-CV-0720, 2016 WL 4530473, at *14, 2016 U.S. Dist. LEXIS 115832, at *67–68 (N.D.N.Y. Aug. 29, 2016) (finding that the plaintiffs' complaint gives defendants fair notice of their claims where it "identifies the numerous Defendants, sets forth salient facts and approximates the time frames in which they occurred, delineates specific federal and state law claims, and expressly ties specific Defendants to each of those claims"); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015) (finding that the plaintiffs' complaint gives fair notice of the plaintiffs' claims because "Defendants also bring a Motion to Dismiss under Rule 12(b)(6) where they identify and respond to claims raised by Plaintiffs."). Therefore, Plaintiff's amended complaint meets the requirements of Federal Rule of Civil Procedure 8(a)(2).

### B. Section 1983 Claims Against Officer Davy in His Official Capacity

**\*3** Plaintiff brings Section 1983 claims against Officer Davy in both his official capacity and individual capacity, (Dkt. No. 8, ¶ 10), as well as claims against the Village for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Claims against an individual in his "official" capacity are directed against the governmental entity itself, so allowing claims to proceed against an individual in his official capacity and against the municipality is redundant. *Petruso v. Schlaefer*, 474 F. Supp. 2d 430, 441 (E.D.N.Y. 2007), *aff'd*, 312 F. App'x 397 (2d Cir. 2009); *Rivas v. Onondaga County*, No. 19-CV-00844, 2025 WL 2675826, at *11, 2025 U.S. Dist. LEXIS 183290, at *28–29 (N.D.N.Y. Sep. 18, 2025) ("The Court also dismisses any official-capacity claims against [the prosecutor] as duplicative of Plaintiff's claims against the [municipality]."). Therefore, the Court dismisses the claims against Officer Davy in his official capacity.

### C. Section 1983 Claims Against Defendant Davy in His Individual Capacity

Plaintiff brings several Section 1983 claims against Officer Davy in his individual capacity. To state a Section 1983 claim, a plaintiff must allege that: (1) the defendant was acting under

color of state law, and (2) the defendant's actions deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994)).

### 1. Unlawful Seizure

Plaintiff brings a claim for "unreasonable seizure" in violation of the Fourth and Fourteenth Amendments. (Dkt. No. 8, ¶¶ 42–46). Plaintiff alleges that Officer Davy "activated emergency lights and sirens while pursuing [him] in [his] private conveyance in the absence of crime or articulable exigent circumstances," and that "[t]he activation and display of emergency equipment occurred outside of any lawful emergency operation." (*Id at* ¶¶ 43–44). Defendants argue that the "Amended Complaint provides no further details regarding the pursuit [and] how it began." (Dkt. No. 9-2, at 8). They also claim that "Defendants had probable cause, or at a minimum, arguable probable cause, to stop and/or pursue his vehicle" because "plaintiff concedes that on May 7, 2025 he was operating a motor vehicle that was not registered with New York State, a violation of New York State Vehicle and Traffic Law § 401(1)(a)." (*Id.* at 5, 8). Plaintiff denies that he conceded that he was operating an unregistered motor vehicle. (Dkt. No. 10, at 6).

The Court does not interpret the complaint to make this concession. Although Plaintiff alleges that he had "no lawful duty to register [his] private conveyance with the State of New York," (Dkt. No. 8, ¶ 23), this is different from a concession that he actually was "operating a motor vehicle that was not registered with New York State," (Dkt. No. 9-2, at 5). Construing the allegations of the complaint in the light most favorable to Plaintiff, the Court cannot infer that his vehicle was unregistered.

The Court thus turns to whether the complaint plausibly alleges that Officer Davy unlawfully seized Plaintiff. "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' "" *Kaupp v. Texas,* 538 U.S. 626, 629 (2003) (*per curiam*) (first quoting *Florida v. Bostick,* 501 U.S. 429, 437 (1991); and then quoting *Michigan v. Chesternut,* 486 U.S. 567, 569 (1988)); *see also Salmon v. Blesser,* 802

F.3d 249, 252–53 (2d Cir. 2015). "Examples of circumstances that might indicate a seizure ... would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980); *see also Simon v. City of New York,* 893 F.3d 83 (2d Cir. 2018) (citing *Mendenhall,* 446 U.S. at 553)).

**\*4** Limited investigatory stops by law enforcement officers are seizures under the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."); *Terry v. Ohio,* 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person [within the meaning of the Constitution.]"). However, although "any reasonable driver would understand a flashing police light to be an order to pull over ... the Supreme Court has said that such an order would not give rise to a 'stop' unless the driver submitted to the order or was physically apprehended." *Swindle,* 407 U.S. at 566.

Seizures such as police stops "must satisfy the Fourth Amendment's reasonableness limitation." *United States v. Gomez,* 877 F.3d 76, 86 (2d Cir. 2017). "[T]he reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart,* 551 F.3d 187, 193 (2d Cir. 2009). Additionally, "officers [may] 'conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' " *Johnson v. Cerejo,* No. 24-CV-1938, 2025 WL 1616629, at *2, 2025 U.S. Dist. LEXIS 106830, at *4 (D. Conn. June 5, 2025) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000)).

"The reasonable suspicion standard is 'not high' and is 'less demanding than probable cause." *United States v. Martinez-Rodriguez,* 798 F. Supp. 3d 289, 295 (N.D.N.Y. 2025) (quoting *United States v. Santillan,* 902 F.3d 49, 56 (2d Cir. 2018)). "Reasonable suspicion 'demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing.' " *United States v. Wallace,* 937 F.3d 130, 138 (2d Cir. 2019) (quoting *United States v. Singletary,* 798 F.3d

Case 1:26-cv-00419-GTS-CBF     Document 4     Filed 06/24/26     Page 14 of 71

55, 59 (2d Cir. 2015)). "The question of whether a police officer's suspicion is reasonable is 'an objective inquiry based on the totality of the circumstances as they would appear through the eyes of a reasonable and cautious police officer, guided by his experience and training' ... and 'commonsense judgments and inferences about human behavior.' " *Elmore v. Harriman*, No. 24-CV-186, 2025 WL 1682624, at *7, 2025 U.S. Dist. LEXIS 114513, at *17 (N.D.N.Y. June 16, 2025) (first quoting *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017); and then quoting *United States v. Weaver*, 9 F.4th 129, 140 (2d Cir. 2021) (en banc)).

Plaintiff does not allege that he pulled over for Officer Davy while Plaintiff was in his "private conveyance." (*See* Dkt. No. 8, ¶¶ 43–44). Thus, to the extent Plaintiff seeks to raise an unlawful seizure claim based on Officer Davy's pursuit, as Plaintiff appears to allege in his first cause of action, he fails to state a claim for unreasonable seizure. *See Swindle*, 407 F.3d at 564, 572–73 (attempted traffic stop did not violate the Fourth Amendment because the defendant did not submit to officer's authority, but continued to drive and eventually fled on foot); *United States v. Preston*, No. 07-CR-6128L, 2009 WL 223010, at *9, 2009 U.S. Dist. LEXIS 8518, at *25–26 (W.D.N.Y. Jan. 29, 2009) (finding no seizure occurred where the driver did not pull over when the police activated emergency lights, but rather accelerated and later fled the car), *report and recommendation adopted*, 635 F. Supp. 2d 267 (W.D.N.Y. 2009).

Construing the complaint liberally, the Court also considers the events occurring at or near Plaintiff's private property as part of Plaintiff's claim for unreasonable seizure. Plaintiff alleges that Officer Davy "drew and pointed a loaded firearm at [Plaintiff] while [he] was standing on [his] private property." Because this action "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business," the Court finds that Plaintiff has plausibly alleged that he was seized at that time. *See Kaupp* 538 U.S. at 629; *Mendenhall*, 446 U.S. at 554.

**\*5** The Court cannot, however, credit Plaintiff's legal conclusions that there was "an absence of crime and articulable exigent circumstances"; that there was no "lawful emergency operation"; and that Plaintiff was "not engaging in any criminal activity while located on [his] private property when [Officer Davy] approached," (Dkt. No. 8, ¶¶ 26, 42–43). *See Iqbal*, 556 at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions."); *Zheng v. United States*, No. 25-CV-3695, 2026 WL 810388, at *4, 2026 U.S. Dist. LEXIS 61070, at *10 (S.D.N.Y. Mar. 23, 2026) ("A court resolving a motion to dismiss does not 'credit' mere 'conclusory assertions 'or legal conclusions couched as factual allegations.' " (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020))); *see also United States v. Walker*, 390 F. App'x 854, 857 (11th Cir. 2010) (reviewing the district court's "*legal conclusion* that there were exigent circumstances" (emphasis added)); *United States v. Williams*, 998 F.3d 716, 738 (6th Cir. 2021) (reviewing the district court's "*legal conclusion* as to exigency" (emphasis added)); *Jean-Francois v. Village of Larchmont*, No. 08 CIV. 8212, 2011 WL 744774, at *2, 2011 U.S. Dist. LEXIS 22050, at *4–6 (S.D.N.Y. Mar. 1, 2011) (refusing to credit the plaintiff's "broad, conclusory" allegations that the defendant police detective acted "unlawfully" in detaining, restraining, and arresting the plaintiff).

Plaintiff provides no factual details regarding the circumstances surrounding this pursuit and seizure, such as which traffic citations Officer Davy issued to Plaintiff "related to the same incident," (Dkt. No. 8, at ¶ 32), what Plaintiff was charged with in the "criminal case [that] was commenced against [him] in a local town court based on the same incident," (*id.* at ¶ 33), and whether there is a factual basis for those citations or criminal charges. Without additional factual allegations, the Court cannot "draw the reasonable inference that [Officer Davy] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Daniels v. City of Binghamton*, 947 F. Supp. 590, 596 (N.D.N.Y. 1996) (finding that the plaintiff's allegations that the defendants trespassed on his property to illegally seize him stated "a Fourth Amendment violation in form, [but that] they fail[ed] to do so in substance, since they 'consist[ ] of nothing more than naked assertions, and set[ ] forth no facts upon which a court could find a violation of the Civil Rights Acts..." (quoting *Martin v. N.Y. State Dep't. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam))). Because the amended complaint fails to allege facts that would establish a viable Fourth Amendment claim for unlawful seizure, the Court dismisses that claim.

### 2. Unlawful Search

Plaintiff brings a claim for "unlawful entry onto private curtilage." (Dkt. No. 8, ¶¶ 51–54). He asserts that Officer Davy "entered [his] private curtilage without consent, without

Amara v. Village of Afton, Slip Copy (2026)
2026 WL 1693950

a warrant, and without any emergency circumstance" and that his "privacy and security interests were disturbed as a direct result." (*Id.* at ¶¶ 52–53). Defendant argues that "[P]laintiff's allegations regarding ... entrance into his 'curtilage'... utilize[ ] labels and conclusions that are without any factual support." (Dkt. No. 9-2, at 8).

Police officers need "either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home" or its curtilage. *Kaminsky v. Schriro*, 243 F. Supp. 3d 221, 232 (D. Conn. 2017) (quoting *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014)). However, while the Fourth Amendment protects the home and curtilage, it does not protect a private property's "open fields,"—the areas of property that "do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Oliver v. United States*, 466 U.S. 170, 179 (1984). For example, "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense." *United States v. Reyes*, 283 F.3d 446, 465 (2d Cir. 2002) (alteration in original) (quoting 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.3(e), at 499 (3d ed.1996)). Therefore, "no Fourth Amendment search occurs when a law enforcement officer enters a home's driveway, walkway, or similar area that is accessible to the general public." *Nasca v. County of Suffolk*, No. 05-cv-1717, 2008 WL 53247, at *5, 2008 U.S. Dist. LEXIS 176, at *20 (E.D.N.Y. Jan. 8, 2008) (citing *Reyes*, 283 F.3d at 465); *see also Serby v. Town of Hempstead*, No. 04 Civ. 901, 2006 WL 2853869, at *8, 2006 U.S. Dist. LEXIS 103697, at *19–20 (E.D.N.Y. Sep. 30, 2006).

**\*6** Here, the Court does not consider Plaintiff's assertion that Officer Davy entered onto his "private curtilage" because whether an area is the curtilage of the home is a legal conclusion. *Golodner v. City of New London*, No. 14-CV-00173, 2015 WL 1471770, at *6, 2015 U.S. Dist. LEXIS 41370, at *14–15 (D. Conn. Mar. 31, 2015) ("[B]y labeling the relevant area as 'curtilage,' plaintiff is not making a factual allegation, but rather stating a conclusion."). Likewise, the Court does not consider Plaintiff's statement that there was no "emergency circumstance" because it is a legal conclusion. *See Iqbal*, 556 at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Zheng*, 2026 WL 810388, at *4, 2026 U.S. Dist. LEXIS 61070, at *10 ("A court resolving a motion to dismiss does not 'credit' mere 'conclusory assertions 'or legal conclusions

couched as factual allegations.' " (quoting *Dane*, 974 F.3d at 188–89)); *Walker*, 390 F. App'x at 857 (reviewing the district court's "*legal conclusion* that there were exigent circumstances" (emphasis added)); *Williams*, 998 F.3d at 738 (reviewing the district court's "*legal conclusion* as to exigency" (emphasis added)). Because Plaintiff does not provide adequate allegations as to where Officer Davy was physically located or describe the factual circumstances that support Plaintiff's allegations that there "was no lawful justification" for Officer Davy to approach Plaintiff's private property, he fails to state a claim for unlawful search in violation of the Fourth Amendment.

### 3. False Arrest

Plaintiff alleges that he was "arrested and detained after declining to provide [his] name while located] on [his] private property in the absence of a lawful warrant and probable cause of a crime." (Dkt. No. 8 at ¶ 59). Defendant again points to the lack of factual information regarding this claim, arguing that "the allegations, [including "effectuating an arrest,"] without any supporting facts, are not unconstitutional per se." (Dkt. No. 9-2, at 8). Plaintiff argues that "[b]ecause traffic infractions are not crimes, they cannot supply authority for custodial arrest." (Dkt. No. 10, at 9).

The elements of a claim for false arrest under Section 1983 are substantially the same as those for a claim of false arrest under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)). A confinement is "privileged" if it is based on "probable cause." *See, e.g.*, *Simpson v. City of New York.*, 793 F.3d 259, 265 (2d Cir. 2015). "A police officer has probable cause to arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (quoting *Jackson v. City of New York*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013)). A court assessing probable cause "considers only the facts 'available to the officer at the time of the arrest and immediately before it.' " *Ashley v. City of New*

*York*, 992 F.3d 128, 136 (2d Cir. 2021) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)).

Plaintiff's conclusory assertion that he was "arrested and detained after declining to provide [his] name," (Dkt. No. 8, ¶ 59), provides no factual details regarding the charge(s) for which he was arrested. And the Court does not consider Plaintiff's legal conclusion that Officer Davy had no probable cause to arrest Plaintiff. *C.f. Homere v. Inc. Village of Hempstead*, 322 F. Supp. 3d 353, 359–60 (E.D.N.Y. 2018) ("However, simply including the phrase 'without probable cause' is insufficient [to allege a lack of probable cause in a malicious prosecution claim], and plaintiffs cannot point to any factual allegations to support a plausible claim that there was a lack of probable cause ...."). The remaining factual allegations provide that Plaintiff was "handcuffed, searched, transported to the Chenango County Sherriff's Office, processed, and detained there." (Dkt. No. 8, ¶ 31). In addition, "[a] criminal case was commenced against [him] in a local town court based on the same incident." (*Id.* at ¶ 33). But without more, these allegations do not give rise to constitutional violations. *See Avant v. Miranda*, No. 21-CV-0974, 2021 WL 1979077, at *6, 2021 U.S. Dist. LEXIS 94511, at *15 (E.D.N.Y. May 18, 2021) (" 'Conclusory assertions that [Plaintiff] was "illegally" or "unlawfully" arrested are not sufficient to state a claim under' Section 1983."); *Santiago v. City of New York*, No. 15-CV-517, 2016 WL 5395837, at *3, 2016 U.S. Dist. LEXIS 132376, at *7 (E.D.N.Y. Sep. 27, 2016) ("[A]rrest and detention, absent additional facts do not constitute constitutional violations."), *aff'd*, 697 F. App'x 36 (2d Cir. 2017). Plaintiff's amended complaint leaves critical questions unanswered, such as what crime(s) he was charged with and whether there is a factual basis for the conduct underlying the charge(s). Without such factual allegations, the Court cannot "draw the reasonable inference that [Officer Davy] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Avant*, 2021 WL 1979077, at *6, 2021 U.S. Dist. LEXIS 94511, at *13 ("The [false arrest and false imprisonment] claims fail because the Complaint fails to allege facts 'suggesting that the arrest was not privileged.' "). Because the amended complaint fails to allege facts stating a claim for false arrest and unlawful detainment the Court dismisses that claim.

### 4. Excessive Force

 **\*7**  Plaintiff brings a claim for "excessive force/assault and battery." (Dkt. No. 8, ¶¶ 55–57). Plaintiff asserts that Officer Davy "drew and pointed a loaded firearm at me while I was unarmed and not engaging in any criminal activity." (*Id.* at ¶ 56). He also alleges that he was "physically touched, handcuffed, and restrained during the arrest." (*Id.* at ¶ 57). Defendants move to dismiss this claim on the basis that the amended complaint "provides no further details regarding ... the specifics of Davy's alleged use of force, nor the location or extent or severity of plaintiff's alleged physical injuries." (Dkt. No. 9-2, at 8). Plaintiff responds that the seizure was "unlawful from the outset" and that "[e]ven apart from the unlawful seizure, pointing a firearm at an unarmed resident during a non-criminal encounter violates clearly established law." (Dkt. No. 10, at 10).

The Court construes this claim as one for excessive force under the Fourth Amendment. *See Johnston v. City of Syracuse*, No. 20-CV-1497, 2021 WL 3930703, at *5, 2021 U.S. Dist. LEXIS 166707, at *11 (N.D.N.Y. Sep. 2, 2021) ("A number of courts have held that a § 1983 claim alleging assault and battery is properly construed as an excessive force claim."). "A section 1983 excessive force claim arising in the context of an arrest is analyzed under Fourth Amendment principles." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 376 (S.D.N.Y. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the defendant's use force was "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Hulett*, 253 F. Supp. at 491 (N.D.N.Y. 2017) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013)). When assessing whether a police officer used force unreasonably, a court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham*, 490 U.S. at 396)). In doing so, a court takes the perspective of "a reasonable officer on the scene" rather than that of hindsight. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396).

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect

it." *Graham*, 490 U.S. at 396. "The police are not required to utilize the least amount of force possible to place someone in custody." *Brennan v. City of Middletown*, No. 18 Civ. 6148, 2020 WL 3820195, at *7, 2020 U.S. Dist. LEXIS 120195, at *22 (S.D.N.Y. July 8, 2020).

Plaintiff asserts that Officer Davy "drew and pointed a loaded firearm at me while I was unarmed and not engaging in any criminal activity." (Dkt. No. 8, ¶ 56). Plaintiff does not contend that Officer Davy "used a gun to exact force against him," so "Plaintiff's complaint in this regard is best characterized as premised upon the threat of force." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 627 (E.D.N.Y. 2021). Courts in this circuit have held that threats of force, including the brandishing of a gun, cannot constitute excessive force as a matter of law. *Id*; *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *15, 2015 U.S. Dist. LEXIS 133814, at *42–44 (S.D.N.Y. Sep. 30, 2015) ("[T]he vast majority of cases within the Second Circuit hold that merely drawing weapons when effectuating an arrest does not constitute excessive force as a matter of law." (citing cases)); *Cabral v. City of New York*, No. 12 CIV. 4659, 2014 WL 4636433, at *11, 2014 U.S. Dist. LEXIS 131342, at *28 (S.D.N.Y. Sep. 17, 2014) (finding that the defendant's "approach with his gun drawn" did not constitute excessive force as a matter of law), *aff'd*, 662 F. App'x 11 (2d Cir. 2016).

**\*8** Likewise, he does not state a claim for excessive force related to being touched, handcuffed, and restrained during his arrest. Routine handcuffing at the time of an arrest, "absent something more, cannot constitute a cognizable excessive force claim." *Stokes v. City of New York*, No. 05-CV-0007, 2007 WL 1300983, at *11, 2007 U.S. Dist. LEXIS 32787, at *40 (E.D.N.Y. May 3, 2007). Therefore, because Plaintiff alleges only that he was handcuffed during the arrest, (Dkt. No. 8, ¶ 57), the Court dismisses Plaintiff's excessive force claim. *See Stokes*, 2007 WL 1300983, at *12, 2007 U.S. Dist. LEXIS 32787, at *42 (granting summary judgment on the plaintiff's excessive force claim where he plaintiff did not "claim that the handcuffs were too tight, that she made any complaints of discomfort to defendants, or that she suffered any physical injury as a result of the handcuffing").

### 5. Retaliatory Prosecution

Plaintiff brings a claim for "retaliatory initiation of criminal process" under the First, Fifth, and Fourteenth Amendments. (Dkt. No. 8, ¶¶ 63–66). He alleges that "[a] criminal case was commenced in a local town court based on the same events occurring on [his] private property," and that he "experienced emotional distress and uncertainty from the criminal prosecution." (*Id.* at ¶ 64–65). Defendants seek dismissal of Plaintiff's retaliatory prosecution claim because Plaintiff's amended complaint "does not specifically plead all of the elements of this claim," including "sufficient facts to show the absence of probable cause." (Dkt. No. 9-2, at 9). Plaintiff responds that this "argument misstates controlling precedent and treats a disputed legal issue as if it were a pleaded fact." (Dkt. No. 10, at 12).

"To plead a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). As to the second element, the retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). In addition, "when a plaintiff asserts a claim of retaliatory prosecution under Section 1983, the plaintiff also must plead and prove the absence of probable cause as an element of the claim." *Smith v. Town of Lewiston*, No. 17-CV-959, 2022 WL 3273241, at *12, 2022 U.S. Dist. LEXIS 143911, at *29 (W.D.N.Y. Aug. 11, 2022) (citing *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006) ("Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven.")).

Here, Plaintiffs' allegations are insufficient to state a claim for retaliatory prosecution. Plaintiff does not provide any information whatsoever as to what charge(s) were filed against him, when they were filed, or on what basis. His amended complaint does not identify the First Amendment right he was exercising that resulted in the alleged retaliation. In addition, Plaintiff does not allege that Officer Davy's arrest of him was motivated or substantially caused by the Plaintiff's exercise of any First Amendment right, nor does he allege facts from which the Court could reasonably infer Officer Davy's retaliatory intent. *See Decker Advert. Inc. v. Delaware County*, 765 F. Supp. 3d 128, 150 (N.D.N.Y. 2025) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994)) ("Recognizing that a defendant's motive and intent are difficult to plead with specificity, courts in this Circuit find

that 'it is sufficient to allege facts from which a retaliatory intent reasonably may be inferred.' "). Finally, Plaintiff fails to make any factual allegations indicating that there was no probable cause for Plaintiff's criminal prosecution. For these reasons, the Court dismisses Plaintiff's First Amendment retaliation claim. *See Winnie v. Sinagra*, No. 24-CV-00940, 2025 WL 2391723, at *5, 2025 U.S. Dist. LEXIS 159289, at *8–11 (N.D.N.Y. Aug. 18, 2025) (dismissing the plaintiff's First Amendment retaliation claims where the plaintiff failed to adequately allege the defendant's retaliatory intent and also the absence of probable cause); *see also Falls v. Pitt*, No. 16-CV-8863, 2020 WL 2097626, at *6, 2020 U.S. Dist. LEXIS 77156, at *15–17 (S.D.N.Y. May 1, 2020) (finding that amending a complaint to allege a First Amendment retaliation claim would be futile where the plaintiff failed to plead that the "Defendants' actions were the product of a retaliatory motive" and failed to plead the absence of probable cause).

**\*9** Although the basis for Plaintiff's retaliation claim based on the Fifth Amendment is unclear, [2] this claim also fails. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that "there is no Section 1983 claim for violation of the Self-Incrimination Clause, where the statements at issue were not used against the speaker in a criminal prosecution." *Melvin v. City of New York*, No. 24-CV-4118, 2025 WL 692126, at *6, 2025 U.S. Dist. LEXIS 38802, at *15 (S.D.N.Y. Mar. 4, 2025) (quoting *Nnebe v. Daus*, 665 F. Supp. 2d 311, 333 (S.D.N.Y. 2009) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion)), *aff'd in part, vacated in part on other grounds*, 644 F.3d 147 (2d Cir. 2011)). Plaintiff has not alleged that any statement, or lack thereof, was used in a court proceeding; therefore, Plaintiff has failed to state a claim for retaliation based on the Fifth Amendment. *C.f. Burrell v. Virginia*, 395 F.3d 508, 510–11, 513–14 (4th Cir. 2005) (finding no violation of the Fifth Amendment where the plaintiff, who was arrested after he refused to provide proof of automobile insurance in response to officers' request, did not "allege any *trial* action that violated his Fifth Amendment rights" (emphasis in original)).

[2]   Plaintiff argues in his opposition to Defendants' motion to dismiss that his Fifth Amendment claim is "punishment for silence." (Dkt. No. 10, at 12). He claims that his amended complaint "alleges that [he] was arrested after declining to provide [his] name and that criminal proceedings were initiated

under Penal Law § 195.05 in connection with that refusal." (*Id.*). However, the Court does not consider his argument that "criminal proceedings were initiated under Penal Law § 195.05" because Plaintiff's amended complaint does not allege any statutes under which he was charged. And, in any event, he has failed to state a Fifth Amendment claim for the reasons set forth above.

### 6. Abuse of Authority

Plaintiff brings a claim for "abuse of authority" under the Fourteenth Amendment. (Dkt. No. 8, ¶¶ 47–50). He alleges that Officer Davy "pursued and confronted [him] on private property without lawful justification," and that he experienced "humiliation and distress as a direct result." (*Id.* at ¶¶ 48–49). The Court construes Plaintiffs' claim as a claim for the violation of his substantive due process rights.

"To allege a violation of substantive due process against a state actor, 'a plaintiff must allege a deprivation of a fundamental liberty interest, or a valid property interest in a constitutionally-protected benefit.' " *Puccinelli v. S. Conn. State Univ.*, No. 21-CV-00763, 2022 WL 6770967, at *8, 2022 U.S. Dist. LEXIS 185281, at *22 (D. Conn. Oct. 11, 2022) (quoting *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021), *aff'd sub nom. Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022)). Further, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "[T]he protections of substantive due process are limited to government action that is 'arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised.' " *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 282–83 (E.D.N.Y. 2002) (emphasis omitted) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994)), *aff'd*, 60 F. App'x 861 (2d Cir. 2003).

Here, absent any factual allegations regarding the criminal case and the civil traffic citations and the resolution of those actions, Plaintiff fails to plausibly allege that Officer Davy's conduct was conscience-shocking. *See Angevin v. City of New York*, 204 F. Supp. 3d 469, 483 (E.D.N.Y. 2016) (granting a detective's motion for summary judgment on the plaintiff's substantive due process claim arising from the dismissal of

his indictment for rape due to inconsistent witness statements because plaintiff failed to establish that the officer "engaged in the kind of heinous behavior recognized in the law as 'conscious-shocking' "). The Court thus dismisses Plaintiff's claim for a violation of his substantive due process rights under the Fourteenth Amendment.

### D. Section 1983 Claims Against Village of Afton

**\*10**  Plaintiff brings a *Monell* claim against the Village. He alleges that the Village "was responsible for the training and supervision of [Officer Davy] at all relevant times," and that Plaintiff "sustained harm as a result of the training and supervision failures alleged." (Dkt. No. 8, ¶¶ 68, 69). Defendants move to dismiss this claim because Plaintiff "has not pled plausible facts specific to support a specific constitutional deprivation sustained by the plaintiff, nor does the Amended Complaint identify any policy, custom, policy statements, ordinances, regulations, decisions, or any other facts or admissible evidence to support a policy or custom on behalf of the Defendants." (Dkt. No. 9-2, at 10). The Court agrees.

The Village is subject to liability under section 1983 pursuant to the doctrine of municipal liability. *See Abreu v. City of New York*, No. 17 CIV. 6179, 2018 WL 3315572, at \*8, 2018 U.S. Dist. LEXIS 111938, at \*21 (S.D.N.Y. July 5, 2018). *Monell* extends municipal liability to a municipality or municipal organization "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Thus, to successfully state a claim for municipal liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., '*solely* because it employs a tortfeasor.' " (emphasis in original) (quoting *Monell*, 436 U.S. at 691)).

"Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida County*, No. 15-CV-0849, 2016 WL 4275727, at \*4, 2016 U.S. Dist. LEXIS 106836, at \*12 (N.D.N.Y. Aug. 12, 2016).

The existence of a municipal policy or custom may be plead by "a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019)). Deliberate indifference is "a stringent standard of fault," which requires " 'proof that a municipal actor disregarded a known or obvious consequence' " of the particular failure in training. *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.' " *Id.* (quoting *Brown*, 520 U.S. at 409); *see also Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 37 (N.D.N.Y. 2020) ("Given the assorted hurdles to municipal liability, 'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.' " (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))). The Supreme Court has cautioned that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 536 U.S. at 61.

**\*11**  Plaintiff has not adequately alleged a failure-to-train claim against the Village. Plaintiff's allegation that the Village failed to train Officer Davy is entirely conclusory; he does not specify what training Officer Davy lacked, nor that the Village's alleged failure amounted to deliberate indifference. *See Moore v. City of New York*, No. 08 CIV. 8879, 2010 WL 742981, at \*6, 2010 U.S. Dist. LEXIS 19183, at \*17 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a 'policy' or 'custom' 'without any facts suggesting the policy's existence, are plainly insufficient.' " (quoting *Missel*, 351 F. App'x at 545); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at \*3,

2009 U.S. Dist. LEXIS 51532, at *10–13 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language —that the City 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause.' " (citation omitted)); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3, 2011 U.S. Dist. LEXIS 115949, at *10 (E.D.N.Y. Sep. 28, 2011) (dismissing allegations that contained only legal conclusions and boilerplate and that did not permit the court to infer what city policies, practices, and customs led to the alleged constitutional violation), *aff'd* 480 F. App'x 627 (2d Cir. 2012). As such, Plaintiff's allegations are insufficient to state a *Monell* claim against the Village.

### E. State Law Claims

Plaintiff seeks "damages available under New York common and statutory law pursuant to 28 U.S.C. § 1367." (Dkt. No. 8, ¶ 71). Having found that all of Plaintiff's federal claims are subject to dismissal, the Court declines to exercise jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (finding no abuse of discretion where the district court declined to exercise supplemental jurisdiction over the plaintiff's state law claims after dismissing the plaintiff's amended complaint for failure to state a violation of federal law); *Torres v. City of New York*, 590 F. Supp. 3d 610, 629 (S.D.N.Y. 2022) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006)).

### F. Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC*

*v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

In view of Plaintiff's pro se status and because the Court cannot say filing an amended complaint with additional factual allegations would be futile, the Court will permit Plaintiff to amend his complaint. *See Grabinski v. Portfolio Recovery Assocs., LLC*, No. 11-cv-9712, 2012 WL 1877251, at *1, 2012 U.S. Dist. LEXIS 78655, at *1–2 (S.D.N.Y. Apr. 19, 2012) ("[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))). Any exhibits that Plaintiff wishes the Court to consider going forward must be attached to the amended complaint. This means that the previous complaint and other filings will no longer be the operative documents— everything that is essential must be contained in or attached to the amended complaint.

### V. CONCLUSION

**\*12** For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED**; and it further is

**ORDERED** that Plaintiff's amended complaint (Dkt. No. 8) is **DISMISSED without prejudice**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days, the Clerk of the Court is directed to close this case without further order.

**IT IS SO ORDERED.**

2026 WL 1693950

**All Citations**

Slip Copy, 2026 WL 1693950

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

⚠️ KeyCite Overruling Risk

Overruling Risk   Knick v. Township of Scott, Pennsylvania,   U.S.,   June 21, 2019

2009 WL 4456307
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John GROSSI and Lori Grossi, Plaintiffs,
v.
The CITY OF NEW YORK, Michael R. Bloomberg, individually and in his official capacity, PO Michael Rice, individually and in his official capacity, PO John Doe 1, individually and in his official capacity, PO John Doe 2, individually and in his official capacity, Staten Island University Hospital, Dr. John Doe 3, individually and in his official capacity, and Jane Doe 1, individually and in her official capacity, Defendants.

No. 08–CV–1083 (RRM)(ALC).
|
Nov. 30, 2009.

West KeySummary

1    **Constitutional Law** 🔑 Zoning and Land Use
**Environmental Law** 🔑 Property Protected; Designation and Listing

A city's actions in designating a property as an historical landmark were not motivated by the exercise of First Amendment rights by the property's owner in painting portions of the property; thus, owner failed to state a retaliation claim upon which relief could be granted to survive dismissal. Owner demonstrated that he painted the house to convey a particularized message, challenging the community's wishes about maintaining the historic character of the house. Owner failed to allege a causal connection between painting the house and the decision to have it designated as a landmark. Members of the community marched in protest of owner's planned development of the property before he painted the house. U.S.C.A. Const.Amend. 1.

14 Cases that cite this headnote

**Attorneys and Law Firms**

Steven A. Morelli, Anthony Christopher Giordano, Elaine R. Sammon, The Law Office of Steven A. Morelli, P.C., Carle Place, NY, for Plaintiffs.

Susan P. Scharfstein, Diana M. Murray, The City of New York Law Department, Office of Corporation Counsel, New York, NY, Judd Cohen, Shaub, Ahmuty, Citrin & Spratt, LLP, New Hyde Park, NY, for Defendants.

*ORDER*

MAUSKOPF, District Judge.

**\*1** By Motion filed July 1, 2009 (Docket Entry No. 39), Defendants the City of New York, Michael R. Bloomberg, and Police Officer Michael Rice (collectively, the "City Defendants") moved to dismiss Plaintiffs' Amended Complaint in part pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). By Order entered July 15, 2009, this Court referred that motion to the assigned Magistrate Judge, the Honorable Andrew L. Carter, for a Report and Recommendation. On November 4, 2009, Judge Carter issued a Report and Recommendation (the "R & R") that the City Defendants' motion be granted. Judge Carter reminded the parties that, pursuant to Rule 72(b), any objection to the R & R was due within ten days. Neither party has filed any objection.

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, the Court has reviewed the R & R for clear error and, finding none, adopts the R & R in its entirety. *See Covey v. Simonton,* 481 F.Supp.2d 224, 226 (E.D.N.Y.2007). Accordingly, it is hereby ORDERED that the City Defendants' motion to dismiss the Amended Complaint in part is GRANTED. Plaintiffs' First Cause of Action is DISMISSED, insofar as it relates to the landmark designation of Plaintiffs' property, for failure to state a claim on which relief may be granted. Plaintiffs' Second and Third Causes of Action are DISMISSED, insofar as they relate to the landmark designation of Plaintiffs' property, because they are unripe for adjudication and fail to state a claim on which relief may be granted. Plaintiffs' Fourth Cause of Action is DISMISSED,

2009 WL 4456307

insofar as it relates to the landmark designation of Plaintiffs' property, because it is unripe for adjudication.

SO ORDERED.

### REPORT AND RECOMMENDATION

ANDREW L. CARTER, JR., United States Magistrate Judge.

Plaintiffs John and Lori Grossi, through counsel, commenced the instant litigation against the City of New York, Michael R. Bloomberg (individually and in his official capacity as the mayor of New York City), and Michael Rice of the New York City Police Department, (collectively referred to as the "City"); the Staten Island University Hospital, and various police officers and hospital personnel based upon damages that the Plaintiffs sustained, in part, when their property was landmarked by the New York City Landmarks Preservation Commission. The Plaintiffs' Amended Complaint, dated November 21, 2008, ("Amended Complaint" or "Compl."), contains twelve counts, some of which allege constitutional violations by the Defendants. The City moves this Court to dismiss counts I—IV of the Amended Complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), insofar as those counts relate to the decision to landmark the property. Specifically, the City requests that the Court dismiss counts I—IV pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because those claims are unripe for adjudication. In the alternative, the City requests that the Court dismiss counts I–III pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

 *2  For the following reasons, I conclude, and respectfully recommend, granting the City's motion to dismiss counts II—IV insofar as they arise from the decision to landmark the Plaintiffs' property because those claims are unripe for adjudication. I also find that counts II and III, as they relate to the landmark designation, fail to state a cognizable claim pursuant to Fed.R.Civ.P. 12(b)(6). Finally, I recommend granting the City's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), count I of the Amended Complaint to the extent that it relates to the landmark designation because it fails to state a claim.

### I. Background

The Court infers the following facts from the Plaintiffs' Amended Complaint and assumes the truth of these facts for the purpose of the instant motion. On or around January 25, 2005, John Grossi purchased land in Tottenville, Staten Island, New York (the "Amboy property") with the intention of developing the Amboy property by demolishing existing structures on the land and building affordable housing in its place. *See* Compl. at ¶¶ 1, 18, 19. On or around February 19, 2005, members of the Tottenville Historic Society organized a march to protest Grossi's plan to develop the Amboy property. *See id.* at ¶¶ 2, 21. Shortly thereafter, Grossi was notified that there was a delay approving the necessary permits for the demolition and construction that he had planned for the Amboy property. *See id.* at ¶ 21. In response to the community protestors and the delay in approving the permits, Grossi painted portions of the house located on the Amboy property (the "Bedell house") in "Technicolor." *See id.* at ¶¶ 2, 23.

On or around March 22, 2005, during a stop on the campaign trail in Tottenville, Mayor Bloomberg noticed the attention directed towards the Amboy property and made public statements to the community about his desire to see the property designated as a landmark. *See id.* at ¶¶ 3, 24. The day after Mayor Bloomberg's comments, Plaintiffs allege that the Amboy property "began to be patrolled with twenty-four-hour-a-day" surveillance by members of the New York City Police Department. *Id.* at ¶¶ 25–26. On or around March 30, 2005, the Amboy property was calendared for landmark designation and two weeks later, the New York City Landmarks Preservation Commission officially designated the Amboy property as a landmark. *See id.* at ¶ 27. Plaintiffs allege that due to the landmark designation, the Amboy property was no longer valuable for any useful purpose. *See id.* at ¶¶ 30–31. Plaintiffs further allege that Grossi sustained damages, including, but not limited to, a loss of his real estate investment, loss of wages, loss of profits, and an "inability to perform at or to maintain his trade/business." *Id.* at ¶ 48. [1]

[1] Because the City's motion requests that the Court dismiss counts I–IV of the Amended Complaint insofar as they relate to the landmark designation, no elaboration of the facts relevant to Plaintiffs' remaining contentions is necessary.

Plaintiffs raise certain constitutional claims against the City under 42 U.S.C. § 1983 pertaining to the landmark designation of the Amboy property. Specifically, Plaintiffs allege in their first cause of action that the City violated Grossi's First Amendment rights by designating the Amboy property as a landmark in retaliation for Grossi painting the Bedell house in "Technicolor." *See id.* at ¶¶ 23, 27,

50. [2] Plaintiffs allege in their second cause of action that, in violation of Grossi's Equal Protection rights under the Fourteenth Amendment, Grossi was "selectively prosecuted" based upon his profession as a developer and his plan to build affordable housing for disadvantaged families. *See id.* at ¶ 51. They allege that the City had a desire to harm Grossi and to retaliate against him for exercising his constitutional rights. *See id.* Plaintiffs' third cause of action alleges that Grossi was denied, in violation of his Due Process rights, meaningful notice and an opportunity to be heard before the landmark designation of the Amboy property. *See id.* at ¶¶ 27, 52. Plaintiffs allege in their fourth cause of action that the landmark designation of the Amboy property violated Grossi's substantive Due Process rights and that the City confiscated the property without reasonable compensation. *See id.* at ¶ 53.

[2] The Court also construes count I to include a violation of Grossi's First and Fourth Amendment rights relating to the police surveillance of the Amboy property. *See* Compl. at ¶¶ 25–26, 50.

## II. Discussion

### A. Fed.R.Civ.P. 12(b)(1)

#### i. Standard of Review

**\*3** When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the Court will accept the facts alleged in the Amended Complaint as true, but it does not need to draw all reasonable inferences in the Plaintiffs' favor. *See J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir.2004); *see also Donelli v. County of Sullivan,* 07–cv–2157, 2009 WL 2365551, at \*1 (S.D.N.Y. Jul.31, 2009). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005); *see also Donelli,* 2009 WL 2365551, at \*1; *Homefront Org., Inc. v. Motz,* 570 F.Supp.2d 398, 404 (E.D.N.Y.2008) (dismissing plaintiffs' § 1983 action for lack of subject matter jurisdiction). Where parties dispute subject matter jurisdiction, the Court can consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. *See J.S. ex rel. N.S.,* 386 F.3d at 110; *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir.2003); *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998). However, the Court will not consider "conclusory or hearsay statements contained in the affidavits." *J.S. ex rel.*

*N.S.,* 386 F.3d at 110; *see also Homefront Org.,* 570 F.Supp.2d at 404.

#### ii. The Ripeness Doctrine

"In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action." *Country View Estates @ Ridge LLC v. Town of Brookhaven,* 452 F.Supp.2d 142, 148 (E.D.N.Y.2006) (internal quotation marks and citation omitted); *see also Kittay v. Giuliani,* 112 F.Supp.2d 342, 348 (S.D.N.Y.2000) (dismissing land use claims because, as an initial matter, for the claims to be justiciable, they must be ripe), *aff'd,* 252 F.3d 645 (2d Cir.2001). The Supreme Court has developed specific ripeness requirements applicable to land use disputes. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.E.2d 126 (1985). In *Williamson County,* the plaintiff sued a regional planning commission alleging that the commission's application of various zoning laws and regulations to the plaintiff's property amounted to an unconstitutional "taking" under the Fifth Amendment. *See id.* at 175. The Court held that a plaintiff alleging a Fifth Amendment taking of a property interest must satisfy a two-prong test and show that (1) the state regulatory agency has rendered a final decision on the issue, and (2) the plaintiff has sought just compensation by means of an available state procedure. *See id.* at 186–88, 194–95. Though the planning commission rejected the plaintiff's development plan, the Court argued that the plaintiff could have sought a variance or a permit from a local government agency that would have resolved many of the commission's objections. *See id.* at 188. Because the plaintiff did not apply for such a variance, the Court found that he had not received a "final, definitive" decision regarding how the commission would allow the property to be developed. *See id.* at 191, 199–200. Therefore, the Court reasoned that it could not measure the effects of the land regulations and declined to reach the merits of the action. *See id.*

**\*4** A "final decision" is a "definitive position on the issue that inflicts an actual, concrete injury." *Id.* at 186, 193. "In order to have a final decision, a development plan must be submitted, considered and rejected by the governmental entity. Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property." *Goldfine v. Kelly,* 80 F.Supp.2d 153, 159 (S.D.N.Y.2000) (internal quotations and citations omitted). "The rationale behind the finality requirement is that a court cannot determine whether a Plaintiff has been deprived of

2009 WL 4456307

property arbitrarily or otherwise, until it has a final definitive position before it on how the administrative agency will apply the regulation at issue to the particular land in question." *R–Goshen LLC v. Village of Goshen,* 289 F.Supp.2d 441, 448 (S.D.N.Y.2003), *aff'd sub nom, R–Goshen LLC v. Andrews,* 115 Fed.Appx. 465 (2d Cir.2004); *see also* Williamson County, 473 U.S. at 186–89 (explaining that until a final decision is reached "it is impossible to tell whether the land retains any reasonable beneficial use").

Federal courts have diligently applied the *Williamson County* doctrine and recognized that policies of federalism and judicial restraint require that plaintiffs seek relief from local authorities before entering the federal courts. *See Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 348 (2d Cir.2005). Moreover, local administrative authorities are better situated to resolve land use disputes. *See id.* at 348–49 ("Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."); *Homefront Org.,* 570 F.Supp.2d at 400 (recognizing that the ripeness doctrine is important in land use disputes because such disputes are "are properly left in the first instance to local bodies that are better equipped than federal courts to address and resolve such issues"); *Spence v. Zimmerman,* 873 F.2d 256, 262 (11th Cir.1989) ("We stress that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.").

Here, the Plaintiffs do not make a single allegation in the Amended Complaint that after the landmark designation, Grossi applied for special permits to develop the Amboy property as originally planned and that the City Planning Commission denied his application. *See Kittay,* 112 F.Supp.2d at 349 (dismissing the complaint in part because the complaint failed to allege that the plaintiff sought any approval of his development plan or relief from the land use regulations from the government agencies). Nor do the Plaintiffs dispute their failure to seek a permit in their opposition to the City's motion to dismiss. Rather, the Plaintiffs contend that the landmark designation constitutes a final decision by the local authorities. The Court disagrees. The gravamen of the Plaintiffs' Amended Complaint is that Grossi had specific visions for the use of the Amboy property and the landmark designation impeded these visions. However, a landmark designation does not, by itself, deprive Grossi from developing the Amboy property. *See Adrian v. Town of*

*Yorktown,* 03–cv–6604, 2007 WL 1467417, at *8 (S.D.N.Y. May 16, 2007) (reasoning that the town's designation of the plaintiff's property as "wetlands" did not deprive the plaintiff of its right to develop the property), *aff'd in part and rev'd in part,* 08–cv–4077, 2009 WL 2380078 (2d Cir. Aug.3, 2009). A special permit from the City Planning Commission allows Grossi to proceed as originally planned. *See* Exhibit O attached to the Declaration of Diane Murray (a special permit pursuant to Section 74–111 of the Zoning Resolution permits the modification of certain properties that contain a landmark designated by the New York City Landmarks Preservation Commission).

**\*5** Furthermore, a decision on the permit by the City Planning Commission would supply clearer guidance as to how the landmark designation would affect the Amboy property and what injuries Grossi indeed suffered. *See Kittay,* 112 F.Supp.2d at 349 (noting that without a final agency decision regarding the applicability of the land use regulations, plaintiffs alleged injury is, "for Article III purposes, speculative"); *Country View Estates,* 452 F.Supp.2d at 150 (same). Though the City acknowledges that Grossi began the application process for a special permit, Plaintiffs do not dispute that Grossi failed to complete the paperwork and file the application with the appropriate offices. *See* Affirmation of Leonard Garcia, at ¶¶ 9, 13–14; *see also* New York City Charter § 197–c; *Goldfine,* 80 F.Supp.2d at 160 ("Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action."). Clearly, there has been no final, definitive decision —alleged either in the Amended Complaint or in Plaintiffs' opposition papers—prohibiting Grossi from developing and using the Amboy property as he originally envisioned. *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 89 (2d Cir.2002); *Homefront Org.,* 570 F.Supp.2d at 410; *Goldfine,* 80 F.Supp.2d at 159.

Plaintiffs allude in their opposition papers that the first prong of the *Williamson County* ripeness inquiry is inapplicable because their claims are premised upon immediate injuries. Indeed, certain claims, such as purely procedural Due Process and First Amendment claims, may not be subject to the ripeness inquiry because in some circumstances, the injury incurred is immediate. *See Adrian,* 2007 WL 1467417, at *4. However, there is no blanket rule limiting the final decision requirement solely to Fifth Amendment takings claims. It is well settled that the final decision requirement is applicable to violations of Equal Protection rights, substantive and procedural Due Process claims, and to First Amendment

claims. *See Murphy,* 402 F.3d at 350 (applying ripeness inquiry to First Amendment claim); *Dougherty,* 282 F.3d at 89 (Equal Protection and Due Process claims arising from a denial of a permit dismissed in the absence of a final determination); *Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 96–97 (2d Cir.1992) (applying ripeness test to substantive Due Process claims); *Homefront Org.,* 570 F.Supp.2d at 406 (Equal Protection, Due Process, and First Amendment claims); *Country View Estates,* 452 F.Supp.2d at 149 (Equal Protection and Due Process claims). Moreover, when "takings, due process and equal protection claims ... arise out of the same factual events ..., the Court will apply the same ripeness inquiry to plaintiff's takings, due process, and equal protection claims." *Country View Estates,* 452 F.Supp.2d at 149. Here, the Plaintiffs' constitutional claims arise from a set of facts common to their takings claims, i.e., the landmark designation. Therefore, as discussed above, the Court finds that the ripeness test bars Plaintiffs' Equal Protection and Due Process claims from continuing in federal court (*see infra* for discussion on First Amendment claims).

**\*6** In limited circumstances, a property owner is excused from obtaining a final decision if a local agency lacks discretion to grant relief or "has dug its heels and made clear that all such applications will be denied." *Murphy,* 402 F.3d at 349; *see also Southview Assocs., Ltd.,* 980 F.2d at 98–99; *Homefront Org.,* 570 F.Supp.2d at 407. Plaintiffs allege that Grossi was banned from entering the city buildings to secure a permit. *See* Compl. at ¶ 47. However, the futility exception is inapplicable here because, among other reasons, there is no indication that Grossi was prohibited from applying for the permits. *See Homefront Org.,* 570 F.Supp.2d at 408 (allegations of hostility exhibited by the town officials towards the plaintiffs' development plan is insufficient to invoke the futility exception); *Kittay,* 112 F.Supp.2d at 350 (holding that to invoke the futility exception, at a minimum, plaintiff must make at least one meaningful application for development).[3] In fact, as discussed above, Grossi started the application process for a special permit but failed to complete it. Accordingly, I respectfully conclude that the Court lacks jurisdiction over counts II—IV of the Amended Complaint because they are not yet ripe for adjudication.

[3]    Even if the Plaintiffs could invoke the futility exception to the final decision requirement, their claims would not be ripe because of their failure to show that New York State does not provide a remedy for the alleged violations. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank,*

473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.E.2d 126 (1985); *TZ Manor, LLC v. Daines,* 08–cv–3293, 2009 WL 2242436, at \*5 (S.D.N.Y. Jul.28, 2009) (settled law that New York does have reasonable provisions for obtaining compensation); *Country View Estates @ Ridge LLC v. Town of Brookhaven,* 452 F.Supp.2d 142, 156 (E.D.N.Y.2006) (same); *Goldfine v. Kelly,* 80 F.Supp.2d 153, 161–62 (S.D.N.Y.2000).

**B. Fed.R.Civ.P. 12(b)(6)**

**i. Standard of Review**

When reviewing the City's motion to dismiss pursuant to Fed.R.Civ .P. 12(b)(6), the Court accepts the allegations in the Amended Complaint as true, draws all inferences in the Plaintiffs' favor, and construes the Amended Complaint liberally. *See Dougherty,* 282 F.3d at 87; *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001). To withstand dismissal, the Amended Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see ialso Zerilli–Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 79 (2d Cir.2003). Moreover, "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555; *see also Ashcroft v. Iqbal,* 556 U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. The Court limits its analysis to the facts stated in the Amended Complaint, documents attached to the Amended Complaint as exhibits, and documents incorporated by reference in the Amended Complaint. *See Country View Estates,* 452 F.Supp.2d at 148.

**ii. Retaliation Claim**

As noted above, the ripeness doctrine is not applied as stringently to First Amendment claims where, in some instances, injuries are immediate. *See Dougherty,* 282 F.3d at 90; *but see Murphy,* 402 F.3d at 350 (recognizing that in some circumstances, courts should apply the *Williamson* prong-one ripeness test to First Amendment claims); *Homefront Org.,* 570 F.Supp.2d at 406 n. 4 (holding that plaintiffs' First Amendment claims were not ripe for review). Assuming, *arguendo,* that Plaintiffs' First Amendment claim that the landmark designation was made in retaliation for Grossi exercising his rights is ripe for adjudication, *see Dougherty,* 282 F.3d at 90 (plaintiff suffered an immediate injury at the moment the defendants revoked his building permit), I

respectfully conclude that count I fails as a matter of law because Plaintiffs have not adequately stated a claim upon which relief can be granted. *See Rosendale v. Brusie,* 07–cv–8149, 2009 WL 778418, at *8–l 1 (S.D.N.Y. Mar. 25, 2009) (assuming for argument's sake that plaintiff's First Amendment claims are ripe for review, but dismissing part of the claims pursuant to Fed.R.Civ.P. 12(b)(6)).

**\*7** To establish a retaliation claim under § 1983, Plaintiffs must show (1) that Grossi's conduct was protected by the First Amendment and (2) that such conduct prompted or substantially caused the City's action. *See Dougherty,* 282 F.3d at 91.[4] Plaintiffs claim that the Amboy property was landmarked in retaliation for Grossi painting the Bedell house in "Technicolor," thereby violating Grossi's First Amendment rights. *See* Compl. at ¶ 51. The City contends that the First Amendment's protection does not extend to the painting of the house. The Court disagrees with the City's interpretation.

[4] Recent decisions in the Second Circuit also require the additional element that Plaintiffs prove that the City's actions chilled the exercise of Grossi's First Amendment rights. *See Butler v. City of Batavia,* 08–cv–1361, 2009 WL 910194, at *1 (2d Cir. Apr.6, 2009); *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001); *Rosendale v. Brusie,* 07–cv–8149, 2009 WL 778418, at *18 (S.D.N.Y. Mar.25, 2009); *D'Angelo–Fenton v. Town of Carmel,* 470 F.Supp.2d 387, 398 (S.D.N.Y.2007); *Estate of Morris ex rel. Morris v. Dapolito,* 297 F.Supp.2d 680, 691–92 (S.D.N.Y.2004); *but see Puckett v. City of Glen Cove,* 08–cv–3594, 2009 WL 1916275, at * 12 (E.D.N.Y. Jun.30, 2009) (finding that the "chilling element" is not required in this land use case).

The First Amendment's protection extends to symbols and expressive conduct. *See Virginia v. Black,* 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); *Muhammad v. Bonner,* 05–cv–1851, 2008 WL 926574, at *6 (E.D.N.Y. Mar.31, 2008). In addition, Plaintiffs bear the burden of demonstrating that the First Amendment applies and must allege more than a mere "plausible contention" that Grossi's conduct is expressive. *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Whether particular conduct is worthy of the First Amendment's protection depends on whether Grossi intended "to convey a particularized message," and whether the surrounding circumstances are such that "the

likelihood was great that the message would be understood by those who viewed it." *Spence v. State of Wash.,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). The Amended Complaint alleges that Grossi, instead of yielding to the community's discontent, painted the Bedell house in vibrant colors to protest and to garner attention. *See* Compl. at ¶¶ 2, 23. These allegations suffice at this initial pleading stage. While community members may not understand the literal reasons behind Grossi's conduct, given the circumstances, it is plausible to infer that they understood he was deliberately challenging the community's wishes about maintaining the historic character of the Bedell house.

Nevertheless, the Plaintiffs' First Amendment claim fails because they have not alleged a causal connection between the painting of the Bedell house and the decision to have it designated as a landmark. For a causal connection to exist, the conduct should have played a substantial factor in the City's decision. *See Cronin v. St. Lawrence,* 08–cv–6346, 2009 WL 2391861, at *5 (S.D.N.Y. Aug.5, 2009) (internal citations omitted). Instead, Plaintiffs simply surmise that the City retaliated against Grossi for painting the Bedell house. *See Butler v. City of Batavia,* 08–cv–1361, 2009 WL 910194, at *1 (2d Cir. Apr.6, 2009) (dismissing complaint because it was devoid of factual allegations showing that defendants' actions were "motivated or substantially caused by" plaintiffs' exercise of their First Amendment rights); *Rosendale,* 2009 WL 778418, at *9 (dismissing partially plaintiff's First Amendment claims because it failed to plead facts sufficient to render the claims plausible and made only vague and conclusory allegations in its complaint).

**\*8** Though Plaintiffs cite the relative quickness of the landmark designation, admissions made in the Amended Complaint contradict the Plaintiffs' arguments that the painting played a substantial role in the landmark designation, rather than the community's wish to preserve a piece of historic architecture. *See generally Holmes v. Poskanzer,* 08–cv–14750, 2009 WL 2171326, at *2 (2d Cir. Jul.21, 2009) ("Regardless of any retaliatory motive, the plaintiff cannot prevail if a defendant can show he or she would have taken the same action even in the absence of the allegedly improper reason."). For example, the Amended Complaint clearly indicates that the community members had a strong interest in preserving the Amboy property *before* the painting occurred. *See* Compl. at ¶¶ 2, 23–24. Plaintiffs admit that before the painting took place, members of the Tottenville Historic Society organized a march in protest of Grossi's planned development of the Amboy property and that the

application for the demolition and building permits was "put on hold ..." *Id.* at ¶¶ 21–22. Plaintiffs also allege that Mayor Bloomberg, in hopes of securing votes from those "against 'over-development' on Staten Island," promised to landmark the Amboy property so that the Bedell house could not be demolished. *Id.* at ¶¶ 3, 24; *see also Razzano v. County of Nassau,* 599 F.Supp.2d 345, 352 (E.D.N.Y.2009) (dismissing complaint in part because, although the court assumed the truth of the plaintiff's allegations, it was clear from the pleadings that the defendants' actions were not motivated by the plaintiff's exercise of his First Amendment rights). Thus, Plaintiffs' allegations bar their First Amendment claim from crossing the threshold of plausibility.[5] Accordingly, I recommend dismissing count I as a matter of law. *See Ashcroft,* 129 S.Ct. at 1950 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss).[6]

[5]  The purpose of a landmark designation is to preserve the aesthetic and historical charm of a community, not to punish someone for merely painting his house. *See* N.Y.C. Administrative Code, § 25–301 *et seq.* (matter of public policy to protect the city's historic, aesthetic and cultural heritage); *see also Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 129, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

[6]  Count I of the Amended Complaint encompasses more than the landmark claims. As the City's motion is limited to those claims resulting from the landmark decision, notwithstanding the surveillance claim, I recommend dismissing count I only to that extent that Plaintiffs claim the City landmarked the property in retaliation for Grossi painting the Bedell house.

### iii. Surveillance Claim

Plaintiffs allege that the City maintained a surveillance system of Grossi's property and that police officers used harassing language and requested identification from him whenever he attempted to enter the Amboy property. *See* Compl. at ¶¶ 25–26. It is settled law that mere surveillance by government authorities without a showing of illegality and cognizable injury does not give rise to an action for violation of rights guaranteed by the First Amendment. *See Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (holding that in order to assert a claim grounded on surveillance conducted by the government, plaintiff must assert specific present objective harm or a threat of specific future harm);

*Fifth Avenue Peace Parade Comm. v. Gray,* 480 F.2d 326, 331 (2d Cir.1973) (organizers who alleged FBI surveillance failed to show any specific harm and therefore failed to present a justiciable controversy); *Gaston v. Gavin,* 97–cv–1645, 1998 WL 7217, at *4 (S.D.N.Y. Jan.8, 1998) (dismissing plaintiff's First Amendment claim because he failed to show that the government's investigation discouraged him from exercising his First Amendment rights and that as a result, he suffered a concrete and demonstrable injury). Here, Plaintiffs' claim fails because there are no facts in the Amended Complaint indicating that the surveillance discouraged Grossi from exercising his rights. Plaintiffs allege that Grossi suffered harm from the police surveillance on the Amboy property, i.e., harassing language and requests for identification to enter his own property.[7] *See* Compl. at ¶ 26. These allegations are insufficient to support a First Amendment claim. *See Nour v. New York City Police Dept.,* 92–cv–7066, 1995 WL 42319, at *3 (S.D.N.Y. Feb.2, 1995) (finding that plaintiff's allegations of alleged surveillance was "nerve [racking]" and "shocking," that he no longer had a "private life," and that he suffered mental anguish, emotional distress, fear, and pain were insufficient assertions of the required objective injury during the motion to dismiss phase).[8] Plaintiffs' reliance on *Mason v. Ward* is misplaced because, there, plaintiffs alleged an objective injury. 88–cv–4704, 1991 WL 143713, at *7 (S.D.N.Y. Jul.20, 1991) (plaintiffs' allegation that the surveillance damaged their reputation and caused them to lose business was sufficient to survive a motion to dismiss). Accordingly, I recommend dismissing Plaintiffs' claim that the alleged police surveillance of the Amboy property violated Grossi's First and Fourth Amendment rights.

[7]  As Plaintiffs have not alleged in their Amended Complaint that the surveillance took place on private property, this Court notes that there is no trespass violation alleged in relation to the surveillance claim.

[8]  The Amended Complaint does not state a proper Fourth Amendment violation because the Plaintiffs do not allege that Grossi was prohibited from leaving or entering the Amboy property. *See Nour v. New York City Police Dept.,* 92–cv–7066, 1995 WL 42319, at *3 (S.D.N.Y. Feb.2, 1995) ("A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was

not free to leave" (internal quotation marks and citations omitted)).

### iv. Equal Protection Claim

**\*9** The City has moved to dismiss Plaintiffs' Equal Protection claim on the grounds of both ripeness and a failure to state a claim. Although count II is not ripe for adjudication, *see supra,* for the sake of completeness, I will analyze the claim pursuant to a Fed .R.Civ.P. 12(b)(6) standard.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In order to establish an Equal Protection claim under 42 U.S.C. § 1983, a party must show that:

> (1) the person, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*R–Goshen LLC,* 289 F.Supp.2d at 453; *see also Butler,* 2009 WL 910194, at \*1 (dismissing Equal Protection claims because the plaintiffs did not plead sufficient facts to make the violations plausible); *Puckett v. City of Glen Cove,* 08–cv–3594, 2009 WL 1916275, at \*6 (E.D.N.Y. Jun.30, 2009).

Plaintiffs contend that Grossi was "selectively prosecuted on the basis of his status as a "developer" and his "desire to build affordable housing for disadvantaged and minority families." Compl. at ¶ 51. Plaintiffs further contend that the City punished Grossi for exercising his constitutional rights. *See id.* These arguments fail as a matter of law. A "developer" is not a protected class as contemplated under the Equal Protection Clause. *See Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 453 (S.D.N.Y.1998) (holding that classifications of "developers" or "commercial landowners" are not suspect under the Equal Protection Clause). Plaintiffs also fail to allege sufficient facts that Grossi was treated differently from any other developer or property owner in

the town. *See Puckett,* 2009 WL 1916275, at \*6 (dismissing plaintiff's complaint because there was no allegation in the complaint that other similarly situated homeowners were more favorably treated than the plaintiff). In fact, Plaintiffs do not make a single reference to individuals who are similarly situated to Grossi with respect to the landmark designation. *See id.* They fail to allege that the City permitted other landowners with similar properties to develop their land as originally planned because those owners did not paint their houses in protest or engaged in expressive conduct protected by the First Amendment. *See Gagliardi v. Village of Pawling,* 18 F.3d 188, 193 (2d Cir.1994); *Puckett,* 2009 WL 1916275, at \*6 (holding that "an Equal Protection claim is stated only by showing substantial similarity, coupled with disparate treatment that is either arbitrary or motivated by ill will"). [9] Rather, Plaintiffs make conclusory statements that the City had a desire to harm Grossi and to retaliate against him for exercising his constitutional rights. Because the Plaintiffs fail to assert a viable Equal Protection claim, I find count II fails as a matter of law. [10]

[9] Plaintiffs' claim is not a "class of one" argument because they make clear in their opposition papers that Grossi's rights were violated because he exercised his First Amendment right when painting the house in "Technicolor." If Plaintiffs intended to argue a "class of one" theory for selective treatment, their argument also fails as a matter of law because they have not sufficiently alleged that Grossi was intentionally treated differently from other property owners in all material aspects and that there was no rational basis for such treatment. *See, e.g., Harlen Assocs. v. Inc. Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001).

[10] The holding is limited to the allegations based upon the landmark designation.

### v. Procedural Due Process Claim

**\*10** The City has moved to dismiss count III on the grounds of both ripeness and a failure to state a claim. Although the count is not ripe for adjudication, *see supra,* for the sake of completeness, I will analyze the claim pursuant to a Fed.R.Civ.P. 12(b)(6) standard.

To demonstrate a violation of procedural Due Process rights based upon a land regulation, Plaintiffs must first demonstrate the possession of a federally protected property right to the relief sought and the insufficiency of any state

remedy. *See Puckett,* 2009 WL 1916275, at *8. Moreover, "postdeprivation remedies made available by the State can satisfy the Due Process Clause" and "predeprivation notice and opportunity to be heard is pretermitted if the State provides a postdeprivation remedy." *Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

It is well established in the Second Circuit that the availability of an Article 78 proceeding provides homeowner plaintiffs with all of the procedural Due Process rights to which they are due. *See Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 881–82 (2d Cir.1996) (noting "that there *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty") (italics in the original); *Puckett,* 2009 WL 1916275, at *10 (finding that the plaintiff cannot prevail on a Due Process argument because he could have availed himself to an Article 78 proceeding); *Rector, Wardens, and Members of the Vestry of St. Bartholomew's Church v. City of New York,* 728 F.Supp. 958, 965 n. 12 (S.D.N.Y.1989) (declining to decide whether the Landmarks Preservation Commission denied the plaintiff its procedural Due Process rights because any defects should have been addressed through an Article 78 hearing in state court). Plaintiffs have not indicated that they pursued an Article 78

hearing or that other state remedies have been insufficient. Accordingly, I find count III fails as a matter of law.

### III. Conclusion

For the reasons set forth above, I respectfully recommend granting the City's motion to dismiss, without prejudice, counts II–IV insofar as they relate to the landmark designation because those claims are not ripe for adjudication. I also find that counts II and III fail to state a cognizable claim pursuant to Fed.R.Civ.P. 12(b)(6). Finally, I recommend granting the City's motion to dismiss, without prejudice, count I of the Amended Complaint as it relates to the landmark designation pursuant to Fed.R.Civ.P. 12(b) (6) for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed.R.Civ.P., the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court. Failure to file timely objections will preclude appellate review of any order of judgment that will be entered.

**\*11  SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 4456307

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1129887
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew HENDRICKS, Plaintiff,
v.
Shelley M. MALLOZZI, Director of the Inmate
Grievance Program for DOCCS; Earl Bell,
Superintendent, Clinton Correctional Facility; D.
Holdridge, Deputy Superintendent for Security, Clinton
Correctional Facility; and C. DeLutis, Captain of
Security, Clinton Correctional Facility, Defendants.

9:20-CV-1035 (MAD/ML)
|
Signed 01/14/2022

**Attorneys and Law Firms**

Andrew Hendricks, Pro Se Plaintiff, Eastern New York
Correctional Facility, Box 338, Napanoch, New York 12458.

BRENDA BADDAM, ESQ., Assistant Attorney General,
LETITIA A. JAMES, Attorney General for the State of New
York Counsel for Defendants, The Capitol, Albany, New York
12224.

**REPORT and RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** Currently before the Court, in this civil rights action filed
by Andrew Hendricks ("Plaintiff") against Shelley Mallozzi,
Earl Bell, D. Holdridge, and C. DeLutis (collectively
"Defendants"), is Defendants' motion to dismiss for failure
to state a claim upon which relief may be granted pursuant
to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 17.) For the reasons set
forth below, I recommend that Defendants' motion be granted
in part and denied in part.

**I. RELEVANT BACKGROUND**

**A. Procedural History**
On September 3, 2020, Plaintiff commenced this action by
the filing of a Complaint, accompanied by a motion for
leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 2.)
On October 29, 2020, United States District Judge Mae A.

D'Agostino granted Plaintiff's IFP application and dismissed
the Complaint without prejudice pursuant to 28 U.S.C. §§
1915(e)(2)(B) and 1915A(b)(1). (Dkt. No. 5.)

On November 18, 2020, Plaintiff filed an Amended
Complaint. (Dkt. No. 8.) On December 23, 2020, Judge
D'Agostino reviewed Plaintiff's Amended Complaint and set
forth the factual allegations therein. (Dkt. No. 9 at 2-4.) Judge
D'Agostino ordered that (1) Plaintiff's Amended Complaint
was accepted for filing with respect to a claim for retaliation
pursuant to the First Amendment and 42 U.S.C. § 1983,
against Defendants, and (2) any other causes of action in the
Amended Complaint were dismissed. (*See generally* Dkt. No.
9.)

On March 1, 2021, in lieu of an answer, Defendants filed the
pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)
(6). (Dkt. No. 17.)

**B. Parties' Briefing on Defendants' Motion to Dismiss**

**1. Defendants' Memorandum of Law**

Generally, in support of their motion to dismiss, Defendants
assert the following two arguments: (1) Plaintiff's retaliation
claim fails as a matter of law, and (2) Plaintiff failed to allege
the personal involvement of Defendants Holdridge, Bell, and
Mallozzi. (Dkt. No. 17, Attach. 1 at 6-16.)

More specifically, Defendants first argue that Plaintiff's
retaliation claim fails as a matter of law because the Amended
Complaint fails to allege facts plausibly suggesting that
Defendants took an adverse action against Plaintiff or that
a causal connection existed between his protected speech
and the alleged adverse action. (*Id.* at 8-15.) Defendants
argue that Plaintiff's claim against Defendant DeLutis—
which is premised on grievance that Plaintiff filed against
Correction Officer Ayotte (an unnamed party to this action)
—fails because (a) Plaintiff's conclusory allegation (that
Defendant DeLutis was "sympathetic" towards C.O. Ayotte
for an unknown reason) is insufficient to overcome the
heightened burden of establishing a causal connection of
retaliation by one officer (Defendant DeLutis) on behalf of
another officer (C.O. Ayotte), (b) inmates do not have any
constitutional right to a particular prison job, (c) temporal
proximity alone is insufficient to establish an inference of
retaliation, and (d) Defendant DeLutis's actions were taken
for legitimate, non-retaliatory reasons unrelated to Plaintiff's

protected activity—namely, a security concern. (*Id.* at 8-11.) Defendants argue that Plaintiff's claim against Defendant Holdridge—which is premised on his alleged approval of Defendant DeLutis's decision to remove Plaintiff from his job, a lie that he reviewed confidential documents supporting Plaintiff's removal from his job, and failure to follow DOCCS policies and procedures when removing Plaintiff from his job—fails because (a) inmates do not have any constitutional right to a particular prison job, (b) temporal proximity alone is insufficient to establish an inference of retaliation, (c) Plaintiff's conclusory allegation (that Defendant Holdridge acted out of sympathy towards C.O. Ayotte for an unknown reason) is insufficient to overcome the heightened burden of establishing a causal connection of retaliation by one officer (Defendant Holdridge) on behalf of another officer (C.O. Ayotte), and (d) Defendant Holdridge's alleged lie (that he reviewed security documents that do not exist) and failure to follow DOCCS policy for removal of an inmate from his job, are not constitutional violations and thus do not give rise to liability pursuant to 42 U.S.C. § 1983. (*Id.* at 11-13.) Defendants argue that Plaintiff's claim against Defendants Bell and Mallozzi—which is premised on their denial of his grievance appeal, failure to properly investigate his claims, and assertion that Defendant Bell was "deceptive and misleading" about DOCCS policy—fails because (a) Plaintiff's conclusory allegation that Defendants Bell and Mallozzi retaliated against him for filing a grievance against C.O. Ayotte is insufficient to overcome the heightened burden of establishing a causal connection of retaliation by one officer (Defendant Bell or Defendant Mallozzi) on behalf of another officer (C.O. Ayotte), (b) prisoners do not have a due process right to a thorough investigation of grievances and thus, Defendants Bell and Mallozzi's alleged incomplete investigations are not adverse actions, (c) there is no temporal proximity between the filing of Plaintiff's grievance against C.O. Ayotte on October 12, 2017, and the affirmations of Plaintiff's grievance appeals by Defendants Bell and Mallozzi on January 18, 2018, and May 8, 2019, respectively. (*Id.* at 14-15.)

**\*2** Second, Defendants argue that based on the Second Circuit decision set forth in *Tangretti*, Plaintiff must allege facts plausibly suggesting that Defendants Holdridge, Bell, and Mallozzi violated his First Amendment rights with their own individual actions. (*Id.* at 15-17.) Defendants argue that the Amended Complaint fails to allege that Defendants Holdridge, Bell, and Mallozzi were (a) aware of Plaintiff's protected speech (i.e., the grievance he filed against C.O. Ayotte), (b) knew the extent of the investigation

into the first grievance filed by Plaintiff, or (c) acted with retaliatory animus towards Plaintiff because of the grievance filed against C.O. Ayotte. (*Id.*) Further, Defendants argue that Plaintiff's allegations regarding Defendants Bell and Mallozzi—that they were involved in the affirmation of Plaintiff's grievance denial—are insufficient to allege personal involvement. (*Id.*)

### 2. Plaintiff's Opposition

Generally, in opposition to Defendants' motion, Plaintiff argues that (1) the Amended Complaint alleges facts plausibly suggesting a claim of retaliation; and (2) the Amended Complaint plausibly alleges the personal involvement of Defendants Holdridge, Bell, and Mallozzi. (Dkt. No. 22.)

First, Plaintiff argues that he plausibly alleged a claim of retaliation against (1) Defendant DeLutis because (a) he alleged that Defendant DeLutis e-mailed Ms. Hicks telling her to remove Plaintiff from the tailor shop for no reason other than to punish Plaintiff for filing a grievance, which was an adverse action, and (b) there is a causal connection between Plaintiff's grievance and his removal from the tailor shop which can be inferred from (i) the temporal proximity of the two incidents, (ii) Defendant DeLutis's removal of Plaintiff from the tailor shop before conducting an investigation into Plaintiff's grievance, and (iii) the fact that DOCCS' policies and procedures regarding removal of inmates from a program were not followed when removing Plaintiff from the tailor shop, (2) he alleged that Defendant Holdridge became personally involved in the constitutional violation (a) when he lied about reviewing confidential documents that did not exist, and (b) with his support of Defendant DeLutis's decision to remove Plaintiff from the tailor shop, which "showed gross negligence and demonstrated deliberate indifference," (3) he alleged that Defendants Bell and Mallozzi became personally involved in the constitutional violation when they chose "not to do what was right" and "remedy the wrong and in doing so[,] showed gross negligence and demonstrated deliberate indifference to [Plaintiff's] constitutional rights." (Dkt. No. 22 at 4-7.)

Second, Plaintiff argues that (1) as supervisors, Defendants Bell and Mallozzi were personally involved because they learned of the constitutional violation through Plaintiff's grievance appeal and failed to rectify the situation, and (2) Defendant Holdridge was personally involved because Plaintiff sent him a letter requesting information about

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 33 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)
2022 WL 1129887

Plaintiff's removal from the tailor shop and Defendant Holdridge stated that he reviewed confidential documentation supporting Plaintiff's removal and that he supported Plaintiff's removal. (*Id.*)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

**\*3** On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added). [1]

[1]     *Accord, Flores v. Graphtex,* 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F. Supp.

2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*,

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 34 of 71

*Hendricks v. Mallozzi*, Not Reported in Fed. Supp. (2022)
2022 WL 1129887

it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

**\*4** Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

### III. ANALYSIS

#### A. Whether Plaintiff Sufficiently Alleged a First Amendment Retaliation Claim Against Defendant DeLutis

After carefully considering the matter, I answer this question in the affirmative for the reasons set forth below.

A cognizable claim of retaliation pursuant to 42 U.S.C. § 1983 lies when prison officials take an adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit

has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a *prima facie* claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

For purposes of this motion, it is undisputed that Plaintiff engaged in constitutionally protected speech by the filing of a grievance. (Dkt. No. 17, Attach. 1 at 8); *see Davis v. Goord*, 320 F.3d at 352-53 ("[T]he filing of prison grievances is a constitutionally protected activity."); *Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (holding that the filing of a grievance is protected speech).

**\*5** I reject Defendants' argument that the Amended Complaint fails to allege facts plausibly suggesting that they took an adverse action against Plaintiff. Although courts in the Second Circuit have held that "inmates in the DOC[C]S system do not have any constitutional, statutory, regulatory, or precedential right to a particular prison job," *Muhammad v. Warithu-Deen Umar*, 98 F. Supp. 2d 337, 345 (W.D.N.Y. 2000) (citing *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)), courts have also held that terminating a prisoner's employment is an "adverse action" for purposes of a First Amendment retaliation claim. *Casey v. Pallito*, 12-CV-0284, 2016 WL 96157, at *7 (D. Vt. Jan. 7, 2016); *see Logan v. Graham*, 18-CV-0291, 2019 WL 8015209, at *13, n.19 (N.D.N.Y. Nov. 26, 2019) (Lovric, M.J.) (finding that the firing of the plaintiff from his job as a feed-up porter constituted an adverse action for purposes of a First Amendment retaliation claim); *Henderson v. Vanderwerff*, 13-

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 35 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)
2022 WL 1129887

CV-1537, 2016 WL 660921, at *4 (N.D.N.Y. Feb. 18, 2016) (D'Agostino, J.) (holding that the "[p]laintiff's complaint plausibly alleges that Officer Chuttey was involved in the adverse action of terminating [the p]laintiff from his prison job in retaliation for his filing of the grievance against Officer Richardson."); *Chavis v. Struebel*, 317 F. Supp. 2d 232, 238 (W.D.N.Y. 2004) (noting that "assigning the inmate [to] less desirable work assignments satisfies the adverse action requirement" for purposes of a prisoner's First Amendment retaliation claim); *Van Pelt v. Finn*, 92-CV-2977, 1993 WL 465297, at *4 (S.D.N.Y. Nov. 12, 1993) (holding that reassignment of an inmate to a less desirable job with lower pay constitutes an adverse action).

In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action." *Roseboro v. Gillespie,* 719 F. Supp. 2d 353, 366 (S.D.N.Y. 2011). The Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," but, at the summary judgment stage, has also "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017); *see Ziemba v. Thomas*, 390 F. Supp. 2d 136, 157 (D. Conn. 2005) ("Temporal proximity alone is not sufficient for the plaintiff's claim to survive summary judgment.").

I also reject Defendants' argument that the Amended Complaint fails to allege facts plausibly suggesting a causal connection between Plaintiff's protected speech on October 12, 2017 (Dkt. No. 8 at ¶ 11), and Defendant DeLutis's alleged e-mail to Ms. Hicks on October 26, 2017, telling her to remove Plaintiff from his position in the tailor shop (Dkt. No. 8 at ¶ 27).

First, the Second Circuit has made clear that "temporal proximity of an allegedly retaliatory [action] to a grievance may serve as circumstantial evidence of retaliation." *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (holding that, within the context of an employment discrimination claim, "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."). Although

there is significant case law to support the contention that temporal proximity alone is insufficient to survive a motion for summary judgment, *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017), the same is not true at the motion to dismiss stage. *See Roseboro v. Gillespie,* 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (collecting cases) ("To be sure, a 'plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.' Such circumstantial evidence of retaliation, however, without more, is insufficient to survive summary judgment."). Defendants cite to *Thomas v. Waugh*, 13-CV-0321, 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015) (D'Agostino, J. adopting Report-Recommendation on *de novo* review) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)), which held that "temporal proximity alone is insufficient to establish an inference of retaliation." However, the Second Circuit case relied on by the Court in *Thomas*, did not draw such a conclusion. *Slattery*, 248 F.3d at 95. Instead, the Second Circuit in *Slattery*, held that, in the context of an employment case, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95. Here, unlike the facts presented in *Slattery*, the Amended Complaint does not allege facts plausibly suggesting that gradual adverse job actions began before Plaintiff was removed from his position in the tailor shop. (*See generally* Dkt. No. 8.) As a result, I find that temporal proximity alone is sufficient to infer a causal connection at the motion to dismiss stage.

 **\*6** Second, the Amended Complaint alleges more than mere temporal proximity from which, a causal connection could be inferred. As set forth by Plaintiff in his memorandum of law, a causal connection could also be inferred based on Defendants' alleged failure to follow "DOCCS's policies and procedures regarding requests for removal and removal of inmates from program." (Dkt. No. 22 at 4; *accord* Dkt. No. 8 at ¶ 34.) While Defendants' alleged failure to follow DOCCS' policies and procedures does not "explicitly state an intent to retaliate, [it] is consistent with and impl[ies] a retaliatory motive." *Burton v. Lynch*, 664 F. Supp. 2d 349, 368 (S.D.N.Y. 2009).

Third, although Plaintiff alleges that Defendant DeLutis took an adverse action against him on behalf of C.O. Ayotte and "it is difficult to establish one defendant's retaliation for complaints against another defendant," *Hare v. Hayden*, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14,

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 36 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)
2022 WL 1129887

2011), I find that the Amended Complaint alleges facts plausibly suggesting a causal connection. More specifically, Plaintiff alleges that Defendant DeLutis was "in charge of the investigation" regarding the grievance that Plaintiff filed against C.O. Ayotte. (Dkt. No. 8 at ¶ 26.) In addition, the Amended Complaint alleges that (1) Plaintiff filed the grievance on October 20, 2017,[2] (2) on October 26, 2017, Defendant DeLutis sent an e-mail to Ms. Hicks directing her to remove Plaintiff from the tailor shop for "security reasons," and (3) on October 27, 2017, Defendant DeLutis directed Sergeant Stuart to interview Plaintiff and C.O. Ayotte about Plaintiff's grievance. (Dkt. No. 8 at ¶¶ 26-27.) Thus, the Amended Complaint alleges that Defendant DeLutis was aware of Plaintiff's protected speech (the grievance against C.O. Ayotte) at the time he took the adverse action against Plaintiff (directing his removal from the tailor shop) and that those events occurred in close temporal proximity to each other. *See Young v. Shipman*, 18-CV-0782, 2020 WL 1329159, at *4-5 (N.D.N.Y. Mar. 23, 2020) (Sannes, J.) (finding that the plaintiff alleged facts plausibly suggesting a causal connection between the plaintiff's protected speech (a grievance that the plaintiff filed against Defendant Sawyer) and the adverse action (taken by Defendant Shipman) where Defendant Shipman was allegedly aware of the plaintiff's grievance against Defendant Sawyer and the events occurred in close temporal proximity).

[2]    Plaintiff also alleges that this grievance was filed on October 12, 2017. (*Compare* Dkt. No. 8 at ¶ 11, *with* Dkt. No. 8 at ¶ 26.) For purposes of this motion, the Court need not resolve whether Plaintiff's grievance was filed on October 12, 2017, or October 20, 2017.

As a result, I recommend that Defendants' motion to dismiss the Amended Complaint, arguing that Plaintiff's retaliation claim fails as a matter of law against Defendant DeLutis, be denied.[3]

[3]    To the extent that Defendants claim that they would have taken the same action against Plaintiff absent the protected conduct, at this stage of the litigation, the Court is unable, on a motion to dismiss, to resolve such factual disputes. *See Carl v. Dirie,* 09-CV-0724, 2010 WL 3338566, at *6 (N.D.N.Y. March 29, 2010) (Treece, M.J.) (denying the defendant's motion to dismiss retaliation claim due to factual issues surrounding whether the defendants would have taken the same actions in the absence of retaliatory motives).

**B. Whether Plaintiff Alleged Facts Plausibly Suggesting a Retaliation Claim Against Defendants Holdridge, Bell, and Mallozzi**

For the reasons stated in Defendants' memorandum of law, I recommend that Plaintiff's retaliation claim against Defendants Holdridge, Bell, and Mallozzi be dismissed for failure to state a claim upon which relief may be granted. The following is intended to supplement, but not supplant those reasons.

**\*7** "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Before deciding *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel could be considered "personally involved" if

   (1) the defendant participated directly in the alleged constitutional violation;

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 37 of 71
Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)
2022 WL 1129887

(2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright*, 21 F.3d at 501 (additional citation omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. The Second Circuit explained that, " 'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

**\*8** "In light of *Tangreti,* [a] plaintiff cannot establish [a supervisor's] personal involvement based upon the denial of grievance and/or appeals because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment ... claim." *Bryant v. Miller*, 18-CV-0494, 2021 WL 5095284, at *20 (N.D.N.Y. July 22, 2021) (Hummel, M.J.), *report and recommendation adopted by* 2021 WL 4272396 (N.D.N.Y. Sept. 21, 2021) (Suddaby, C.J.); *see Fabrizio*, 2021 WL 2211206, at *10 (holding that the plaintiff's "attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not

plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."); *Zielinski v. Annucci*, 17-CV-1087, 2019 WL 2479616, at *12 (N.D.N.Y. Jan. 8, 2019) (Hummel, M.J.), *report and recommendation adopted by* 2019 WL 1305826 (N.D.N.Y. Mar. 22, 2019) ("[I]t is well-established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement."); *Gomez v. Sepiol*, 11-CV-1017SR, 2014 WL 1575872, at *10 (W.D.N.Y. Apr. 11, 2014) ("[T]he investigation of a grievance alone, is not sufficient to allege personal involvement in the underlying constitutional violation."); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (holding that the plaintiff failed to establish the defendant's personal involvement based on allegations that the defendant investigated the plaintiff's grievance and concluded that there was no evidence that the other defendants had retaliated against the plaintiff).

Plaintiff's allegations against Defendants Holdridge, Bell, and Mallozzi, relate solely to their (a) denial of Plaintiff's grievance, (b) affirmation of Plaintiff's grievance denial, and/or (c) affirmation of Defendant DeLutis's removal of Plaintiff from the tailor shop. (*See generally* Dkt. Nos. 1, 22.) After the Second Circuit's ruling in *Tangreti*, these allegations are insufficient to plausibly suggest the personal involvement of Defendants Holdridge, Bell, and Mallozzi. As a result, I recommend that Defendants' motion to dismiss with respect to Defendants Holdridge, Bell, and Mallozzi, be granted.

**ACCORDINGLY**, it is hereby respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 8) be **DISMISSED** with respect to Defendants Holdridge, Bell, and Mallozzi for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6); and it is further respectfully

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 17) be **GRANTED** to the extent that it sought dismissal of Defendants Holdridge, Bell, and Mallozzi because the Amended Complaint failed to state a claim upon which relief may be granted, and **DENIED** to the extent that it sought dismissal of the Amended Complaint with respect to Defendant DeLutis; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [4]

4    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 1129887

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 39 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)

2022 WL 856885

2022 WL 856885
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew HENDRICKS, Plaintiff,
v.
Shelley M. MALLOZZI, Director of the Inmate Grievance Program for DOCCS; Earl Bell, Superintendent, Clinton Correctional Facility; D. Holdridge, Deputy Superintendent for Security, Clinton Correctional Facility; and C. Delutis, Captain of Security, Clinton Correctional Facility, Defendants.

9:20-CV-1035 (MAD/ML)
|
Signed 03/23/2022

**Attorneys and Law Firms**

ANDREW HENDRICKS, 07-B-0269, Eastern New York Correctional Facility, Box 338, Napanoch, New York 12458, Plaintiff, Pro Se.

BRENDA BADDAM, AAG, NEW YORK STATE ATTORNEY GENERAL, The Capitol, Albany, New York 12224, Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

 **\*1** Plaintiff commenced this civil rights action on September 3, 2020, alleging violations of his constitutional rights while he was incarcerated at Clinton Correctional Facility. *See* Dkt. No. 1. On October 29, 2020, this Court dismissed the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). *See* Dkt. No. 5. Plaintiff filed a proposed amended complaint on November 18, 2020. *See* Dkt. No. 8. In his amended complaint, Plaintiff asserted that Defendants C. DeLutis, K. Hicks, D. Holdridge, Earl Bell, and Shelley M. Mallozzi violated his First and Fourteenth Amendment rights when they removed him from his prison job in retaliation for filing a grievance against a correctional officer. *See id.* at ¶¶ 24-57. On December 23, 2020, this Court accepted the amended complaint for filing only to the extent that it asserted First Amendment retaliation claims against Defendants DeLutis, Holdridge, Bell, and Mallozzi, and dismissed the remaining claims without prejudice. *See* Dkt. No. 9.

On March 1, 2021, in lieu of an answer, Defendants filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 17. On January 14, 2022, Magistrate Judge Lovric issued a Report and Recommendation recommending that Defendants' motion to dismiss be granted with respect to Defendants Holdridge, Bell, and Mallozzi, and denied with respect to Defendant DeLutis. *See* Dkt. No. 28. On January 31, 2021, Plaintiff objected to the Report and Recommendation to the extent it recommended granting Defendants' motion to dismiss with respect to Defendants Holdridge, Bell, and Mallozzi. *See* Dkt. No. 29. Currently before the Court is Magistrate Judge Lovric's Report and Recommendation and Plaintiff's objection thereto.

**II. BACKGROUND**

The amended complaint alleges that, on October 11, 2017, Plaintiff was given an "Inmate Counseling Notification" by a nonparty civilian employee of the tailor shop where Plaintiff worked. *See* Dkt. No. 8 at ¶ 10. Two days later, Plaintiff submitted a grievance to the Inmate Grievance Resolution Committee ("IGRC") alleging that nonparty Corrections Officer ("C.O.") Ayotte was harassing him in connection with the Inmate Counseling Notification. *See id.* at ¶ 11. Defendant DeLutis "was in charge of the investigation[ and] directed [a nonparty C.O.] to interview [Plaintiff] and C.O. Ayotte about the incident, which he did, separately, on 10/27/17." *Id.* at ¶ 26. On November 1, 2017, at the request of Defendant DeLutis, Plaintiff was removed from his position at the tailor shop for confidential "security reasons." *Id.* at ¶ 29.

On December 11, 2017, Plaintiff filed a second grievance complaining that his removal from his tailor shop job was done in retaliation for the prior grievance he had filed against C.O. Ayotte. *See id.* at ¶ 30. The IGRC denied the second grievance, stating that Plaintiff was removed from the tailor shop for legitimate security concerns. *See id.* at ¶ 47. The IGRC told Plaintiff he was not allowed to know what those security reasons were because "it might jeopardize the safety and security of the facility." *Id.*

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 40 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)
2022 WL 856885

**\*2** Plaintiff appealed the IGRC's decision to the Superintendent, Defendant Bell, on December 27, 2017. *Id.* Defendant Bell ultimately denied the appeal and found Plaintiff's retaliation claim to be "unsubstantiated" because Plaintiff was removed from the tailor shop for legitimate security concerns. *Id.* at ¶ 48. In rendering this decision, Defendant Bell allegedly quoted the "Policy, Procedures and Standards for Programing Inmates manual" and stated that "[a] change in program can be made at anytime, 'in person or in writing ....' " *Id.* at ¶ 49. The amended complaint claims that this quote was "nothing less than a shameless and unattractive attempt to be deceptive and misleading" because the manual "clearly does not say 'in person or in writing' in that particular section." *Id.*

Plaintiff appealed Defendant Bell's determination to the DOCCS Central Office Review Committee ("CORC"), where Defendant Mallozzi was serving as Director. *Id.* CORC upheld Defendant Bell's determination, finding that Plaintiff was removed from his position at the tailor shop for security reasons. *See id.* at ¶ 53.

Meanwhile, on November 27, 2017, Plaintiff sent a letter to Defendant Holdridge requesting information about his removal from the tailor shop. *See id.* at ¶ 43. Defendant Holdridge replied the same day, "stating that he had reviewed the 'confidential documentation supporting [Plaintiff's] removal' and that he ... also support[ed] the removal" because it was "in the best interest of the facility." *Id.* The complaint asserts that Defendant Holdridge's statement that he reviewed confidential documentation is a "deliberate and deceptive untruth" because Plaintiff "F.O.I.L. requested any and all documents" related to his removal and the only thing he received was a copy of an email from Defendant DeLutis requesting the removal. *Id.* at ¶¶ 44-45.

On March 1, 2021, Defendants DeLutis, Holdridge, Bell, and Mallozzi filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 17. On January 14, 2022, Magistrate Judge Lovric issued a Report and Recommendation recommending, as relevant here, that the motion to dismiss be granted as to Defendants Holdridge, Bell, and Mallozzi. *See* Dkt. No. 28. Magistrate Judge Lovric found that—after the Second Circuit's recent ruling in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)— a " 'plaintiff cannot establish [a supervisor's] personal involvement based upon the denial of grievance and/or appeals because it does not plausibly suggest "[t]he factors necessary to establish" a First Amendment ... claim.' " Dkt.

No. 28 at 17 (quotation omitted). Noting that "Plaintiff's allegations against Defendants Holdridge, Bell, and Mallozzi, relate[d] solely to their (a) denial of Plaintiff's grievance, (b) affirmation of Plaintiff's grievance denial, and/or (c) affirmation of Defendant DeLutis's removal of Plaintiff from the tailor shop," Magistrate Judge Lovric concluded that Plaintiff's "allegations are insufficient to plausibly suggest the personal involvement of Defendants Holdridge, Bell, and Mallozi." *Id.*

Plaintiff's raises two objections to Magistrate Judge Lovric's Report and Recommendation. First, Plaintiff argues that the amended complaint alleged facts beyond the denial or affirmation of the denial of a grievance that plausibly support the personal involvement of Defendants Holdridge, Bell, and Mallozzi in Plaintiff's retaliation claim. *See* Dkt. No. 29 at ¶¶ 1-4. Second, Plaintiff argues that it was unfair for Magistrate Judge Lovric to rely on *Tangreti* in rejecting his retaliation claims because *Tangreti* was decided after Plaintiff filed his amended complaint. *See id.* at ¶¶ 5-7. Plaintiff also asks for permission to file a second amended complaint should the Court choose to adopt the Report and Recommendation. *See id.* at ¶ 7.

## III. DISCUSSION

### A. Standard of Review

**\*3** A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 41 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)

2022 WL 856885

(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. Plaintiff's Objections**

Plaintiff's first objection is that his amended complaint has alleged facts that plausibly suggest the personal involvement of Defendants Holdridge, Bell, and Mallozzi in the events that form the basis of his retaliation claim. *See* Dkt. No. 29 at ¶ 1. Specifically, Plaintiff asserts that the amended complaint states that Defendant Holdridge "took it upon himself to get personally involved" by responding to a letter written by Plaintiff and "stating that he [had] reviewed the confidential documentation supporting [Plaintiff's] removal from the Tailor Shop ... knowing full well that no such documentation even existed." *Id.* at ¶ 2 (citing Dkt. No. 8 at ¶¶ 42-45). Plaintiff also asserts that Defendant Bell did more than "merely deny [his] grievance on appeal"; claiming that he "reconfigur[ed] and manipulat[ed] the wording of DOCCS policy," showing "blatant disregard for and deliberate indifference to [Plaintiff's] First Amendment rights." *Id.* at ¶ 4 (citing Dkt. No. 8 at ¶¶ 46-51). Finally, Plaintiff argues that the amended complaint states that Defendant Mallozzi "just rubber stamped [D]efendant Bell's decision," making him "just as liable as [D]efendant Bell." *Id.*

**\*4** The Court finds that Defendants' motion to dismiss should be granted with respect to Defendants Holdridge, Bell, and Mallozzi. As Magistrate Judge Lovric found, "[i]t is well settled that affirming the outcome of a disciplinary hearing does not in itself constitute personal involvement in any potential due process violation," or other alleged underlying unconstitutional conduct. *Abdul-Halim v. Bruyere*, No. 9:19-CV-740, 2021 WL 3783087, *3 (N.D.N.Y. Aug. 26, 2021); *see also Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, *5 (S.D.N.Y. Jan. 26, 2021) ("Failing to correct another officer's violation does not suffice"); *Gomez v. Sepiol*, No. 11-CV-1017, 2014 WL 1575872, *10 (W.D.N.Y. Apr. 11, 2014) ("[T]he investigation of a grievance alone, is not sufficient to allege personal involvement in the underlying constitutional violation"); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (holding that the plaintiff failed to establish the defendant's personal involvement based on allegations that the defendant investigated the plaintiff's grievance and concluded that there was no evidence that the other defendants had retaliated against the plaintiff). Contrary to Plaintiff's argument, Defendant Holdridge's reliance on confidential documentation and Defendant Bell's alleged error when quoting DOCCS policy do not transform their review of his second grievance into personal involvement in the underlying constitutional violation (the allegedly retaliatory removal of Plaintiff from his job); nor do these alleged actions amount to separate constitutional violations.

Plaintiff next objects to the application of the Second Circuit's holding in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), [1] to this case. *See* Dkt. No. 29 at ¶¶ 5-7. Specifically,

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 42 of 71

Hendricks v. Mallozzi, Not Reported in Fed. Supp. (2022)
2022 WL 856885

Plaintiff notes that the amended complaint was filed before the decision in *Tangreti* was issued, and argues that it would be "unfair" for the Court to apply *Tangreti* where he "obviously had no knowledge that the [prior] test would soon be invalidated" at the time he wrote the amended complaint. *Id.* at ¶ 7. The Court finds that *Tangreti* is properly applied to this case. "[T]he general rule [is] that a court must apply the law as it exists at the time it renders its decision." *Walsche v. First Inv'rs Corp.*, 981 F.2d 649, 653 (2d Cir. 1992) (citations omitted); *see also Kremer v. Chem. Const. Corp.*, 623 F.2d 786, 788-89 (2d Cir. 1980), *aff'd*, 456 U.S. 461 (1982) ("The general rule of long standing is that judicial precedents normally have retroactive as well as prospective effect"). The narrow exception to this general principle identified in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), does not apply here. [2]

[1]   In *Tangreti*, the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards for establishing supervisory liability. Ultimately, the Second Circuit held that, to establish a constitutional violation against a supervisor, a plaintiff "must plead and prove that [the supervisor-]defendant, through [his or her] own individual actions, has violated the constitution." *Tangreti*, 983 F.3d at 618 (internal quotation marks omitted).

[2]   "To qualify for purely prospective application, a decision 'must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed' " and "the court must then 'weigh' the issue of whether retroactive application would conflict with or further the purposes of the new rule and whether it would produce inequitable results." *Walsche*, 981 F.2d at 653 (quoting *Chevron Oil Co.*, 404 U.S. at 106-07).

Accordingly, the Court adopts Magistrate Judge Lovric's Report and Recommendation in its entirety.

**C. Leave to Amend**

Finally, Plaintiff requests leave to file a second amended complaint should the Court choose to adopt Magistrate Judge Lovric's Report and Recommendation. *See* Dkt. No. 29 at ¶ 7. In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "

'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). However, an opportunity to amend is not required where the plaintiff has previously been afforded such an opportunity. *See Coleman v. brokersXpress, LLC*, 375 Fed. Appx. 136, 137 (2d Cir. 2010); *see also Bivona v. McLean*, No. 9:19-CV-0303, 2019 WL 2250553, \*5 (N.D.N.Y. May 24, 2019); *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, \*8 (N.D.N.Y. Jan. 13, 2008), *aff'd*, 357 Fed. Appx. 388 (2d Cir. 2009).

**\*5**  Here, Plaintiff has already been afforded one opportunity to amend the complaint and has not made any specific showing as to how he would cure the defects that have persisted if given a second opportunity to amend. Accordingly, Plaintiff's request for leave to file a second amended complaint is denied.

**IV. CONCLUSION**

After carefully reviewing the Report and Recommendation, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Report and Recommendation (Dkt. No. 28) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 17) is **GRANTED in part** and **DENIED in part**; [3] and the Court further

[3]   Plaintiff's First Amendment retaliation claim remains against Defendant DeLutis.

**ORDERS** that Defendants Holdridge, Bell, and Mallozzi are terminated as Defendants in this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 856885

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1328396
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Holly Denise JARVIS, Plaintiff,
v.
Officer GLYNN, Officer Dorchester, Supervisor Jason Wells, and Syracuse Police Department, Defendants.

5:25-CV-01168 (BKS/ML)
|
Signed May 13, 2026

**Attorneys and Law Firms**

HOLLY DENISE JARVIS, Plaintiff, Pro Se, 105 Rider Ave, Apt 1, Syracuse, New York 13207

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** Plaintiff Holly Denise Jarvis ("Plaintiff") commenced this *pro se* action against Defendants Officer Glynn, Officer Dorchester, Supervisor Jason Wells, and Syracuse Police Department (collectively "Defendants") alleging violations of her civil rights. (Dkt. No. 1.) Plaintiff did not pay the filing fee and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 5, 6.) For the reasons set forth below, I (1) grant Plaintiff's IFP application, and (2) recommend that the Complaint be accepted in part for filing and dismissed in part.

**I. BACKGROUND**

Construed as liberally [1] as possible, the Complaint alleges violations of Plaintiff's civil rights by Defendants. (*See generally* Dkt. No. 1.) Plaintiff also filed an "Affidavit in Support" that recites essentially the same facts as the Complaint. (Dkt. No. 1-1.)

[1]　The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 19P94)).

Specifically, the Complaint alleges that on or about January 16, 2023, Plaintiff engaged in a "verbal dispute" in her home with her adult son. (Dkt. No. 1 at ¶ 6.) "Plaintiff, who had been drinking, became emotional and used wasp spray ..." some of which landed on her son. (*Id*.) In the course of the altercation, "Plaintiff suffered a laceration to her arm, not caused by her son. Concerned for her wellbeing, her son called 911 for medical help." (*Id*. at ¶ 7.)

The Complaint goes on to allege that Defendants, all identified as members of the Syracuse Police Department, subsequently entered Plaintiff's home "without a warrant, without consent, and absent exigent circumstances." (Dkt. No. 1 at ¶ 8.) Plaintiff asserts that she "specifically told officers she did not want them inside because of loose cats and because she was cleaning up chemicals." (*Id*. at ¶ 9.) One of the Defendants, who is not identified in the Complaint, "physically pushed Plaintiff inside her residence against her will." (*Id*.)

Multiple Defendants then "dragged Plaintiff outside, threw her to the ground, and handcuffed her injured arm despite visible bleeding." (*Id*. at ¶ 11.) As set forth in the Complaint, "Plaintiff was forced into an ambulance and transported against her will to a hospital off Fly Road, where she was later released after refusing medical treatment." (*Id*. at ¶ 13.) The Complaint further asserts that Plaintiff was issued an appearance ticket for Obstruction of Governmental Administration and Harassment in connection with the incident, but that these charges were later dismissed. (*Id*. at ¶ 14.)

The Complaint lists multiple causes of action: (1) unlawful entry; (2) excessive force; (3) false arrest; (4) malicious prosecution; (5) "Unlawful Seizure and Forced Medical Transport" when "Defendants unlawfully detained Plaintiff by forcing her into an ambulance despite her refusal of treatment"; and (6) retaliation in violation of the First Amendment. (Dkt. No. 1 at 4-5.) Plaintiff seeks compensatory and punitive damages, in addition to costs associated with this action, along with a "public apology and written retraction of false allegations and the expungement and sealing of all related arrest records." (*Id*. at 5.)

**\*2** Plaintiff has not paid the filing fee and seeks leave to proceed IFP.

**II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS***

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily

be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] Plaintiff filed an incomplete IFP application on August 26, 2025, that this Court denied on September 29, 2025. (Dkt. Nos. 2, 4.) On October 1, 2025, Plaintiff filed a new IFP application, and filed an updated IFP application on April 28, 2026. (Dkt. No. 5, 6.) After reviewing these applications, the Court finds that Plaintiff's October 1, 2025 IFP application (Dkt. No. 5) is moot, and grants Plaintiff's April 28, 2026 IFP application.[3] (Dkt. No. 6.)

[2]     The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]     Plaintiff is reminded that, although her IFP application has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

### III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

[2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

### IV. ANALYSIS

**A. Claims Against Syracuse Police Department**
"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located.*" White v. Syracuse Police Dep't*, No. 18-CV-1471 (GTS/DEP), 2019 WL 981850 at *3 (N.D.N.Y. Jan. 7, 2019), *rep't and rec. adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.").

Thus, Defendant Syracuse Police Department is not a proper party which would be amenable to suit. As a result, I recommend that Plaintiff's claims against Defendant Syracuse Police Department be dismissed. [4]

[4]  Although the Complaint does not contain any specific allegations against the Syracuse Police Department, it describes the agency as "responsible for the training, supervision, and conduct of its officers." (Dkt. No. 1 at ¶ 4.) To the extent the Complaint could be interpreted to assert municipal liability under *Monell* for failure to properly train employees, this Court would recommend dismissal of this claim as well, as the single incident described in the Complaint does not allege a broadly applicable policy or custom supporting municipal liability.

### B. Claims Against Defendants Glynn, Dorchester, and Wells.

Having recommended dismissal of all claims against the municipal agency defendant, this Court will now address Plaintiff's claims against defendants Glynn, Dorchester, and Wells. As alleged in the Complaint, these individual defendants were all employed by the City of Syracuse Police Department at the time of Plaintiff's January 16, 2023 arrest.

### 1. Fourth Amendment Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on state and municipal officers such as Defendants Glynn, Dorchester, and Wells. *See Tsinberg v. City of New York*, No. 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)).

### a. Warrantless Entry without Probable Cause or Exigent Circumstances

**\*4**  The Fourth Amendment ordinarily requires that police officers obtain a warrant before entering a home without

permission. *Lange v. California*, 594 U.S. 295, 298, 141 S. Ct. 2011, 2016 (2021). Consistent with that reading, the United States Supreme Court has held that it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 563 U.S. 452, 459, 131 S. Ct. 1849, 1856, (2011) (internal citations omitted); *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 1290, 157 L. Ed. 2d 1068 (2004) ("... the right of a [person] to retreat into [the] home and there be free from unreasonable governmental intrusion stands at the very core of the Fourth Amendment ...").

That being said, a law enforcement officer may make a warrantless entry when "the exigencies of the situation" create a compelling need. *Lange*, 594 U.S. at 295, 141 S. Ct. at 2013. This exception enables law enforcement officers to handle situations presenting a "compelling need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149, 133 S.Ct. 1552, 1559, 185 L.Ed.2d 696 (2013). "The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or to take action" without securing a warrant. *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025) (internal citation omitted).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment warrantless entry claim against Defendants Glynn, Dorchester, and Wells.

### b. False Arrest Claim

"In analyzing claims alleging the constitutional tort of false arrest, '[the Court has] generally looked to the law of the state in which the arrest occurred.' " *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). "To establish [a claim of false arrest under New York law] the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. 1975). Confinement is "otherwise privileged" when

probable cause exists, in other words, "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). However, "[p]laintiffs are not required to set forth a lack of probable cause in their complaint." *Case v. City of New York,* 233 F. Supp. 3d 372, 384 (S.D.N.Y. 2017). "Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful." *Broughton,* 37 N.Y.2d at 458 (internal citations omitted). Transportation to a hospital against the patient's wishes may also raise a Fourth Amendment claim. See *Green v. City of New York,* 465 F.3d 65, 83 (2d Cir. 2006)

**\*5** Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment false arrest and unlawful seizure claims against Defendants Glynn, Dorchester, and Wells.

### c. Malicious Prosecution Claim

The elements of a Fourth Amendment malicious prosecution claim under § 1983 are substantially the same as the elements under New York law. *Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir. 2003). To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.,* 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz v. Insogna,* 704 F.3d 105, 112 (2d Cir. 2013); *see also Washington v. Cnty. of Rockland,* 373 F.3d 310, 316 (2d Cir. 2004) ("[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.") (internal quotation marks omitted).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment malicious prosecution claims against Defendants Glynn, Dorchester, and Wells.

### d. Excessive Force

It is well-settled that the Fourth Amendment prohibits the use of excessive force by a police officer during a "seizure" of a free citizen. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). In contrast, the Eighth Amendment prohibits cruel and unusual punishment for incarcerated persons. *See Whitley v. Albers,* 475 U.S. 312, 319 (1986).

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard.' " *Outlaw v. City of Hartford,* 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of New York,* 798 F.3d 94, 100 (2d Cir. 2015)). "The 'proper application' of this standard 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Outlaw,* 884 F.3d at 366 (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)). The reasonableness determination must include consideration of the fact that law enforcement officers often are forced to make quick decisions under stressful and rapidly evolving circumstances rendering the calculation of what amount of force is reasonable difficult. *See Graham,* 490 U.S. at 396-97. Relevant factors include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. *See Brown,* 798 F.3d at 100 (citing *Graham,* 490 U.S. at 396).

**\*6** Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required

to Plaintiff's excessive force claim pursuant to the Fourth Amendment against Defendants Glynn, Dorchester, and Wells. *See Penree v. City of Utica*, No. 13-CV-1323 (MAD/ATB), 2016 WL 915252, at *8 (N.D.N.Y. Mar. 4, 2016) ("The Fourth Amendment's prohibitions against unreasonable seizures applies equally to how an arrest is carried out, and, therefore, all claims that law enforcement officers have used excessive force ... in the course of an arrest ... should be analyzed under the Fourth Amendment." (internal quotation marks and citation omitted)).

### e. Failure to Intervene

Plaintiff's Complaint alleges that Defendants Glynn, Dorchester, and Wells were all present during her January 16, 2016 arrest but does not identify the specific officers alleged to have used excessive force against her. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Liability for failure to intervene pursuant to the Fourth Amendment attaches if police "fail to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Morris v. City of New York*, No. 14-CV-1749, 2015 WL 1914906, at *5 (E.D.N.Y. 2015); *see Sanabria v. Tezlof*, No. 11-CV-6578, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (explaining that liability attaches if an officer "observes or has reason to know ... that a citizen has been unjustifiably arrested").

"[W]here plaintiffs have properly alleged at least one constitutional violation, courts regularly permit such plaintiffs to plead in the alternative as to multiple defendants, finding that such plaintiffs are entitled to discovery to determine which officers participated directly in the constitutional violation." *Lalonde v. City of Ogdensburg*, No. 22-CV-0164 (LEK/DJS), 2023 WL 2537626, at *10 (N.D.N.Y. Mar. 16, 2023) (citing *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012)) ("Because plaintiffs properly allege at least one constitutional violation, plaintiffs are entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene."); *Durr v. Slator*, 558 F. Supp. 3d 1, 26 (N.D.N.Y. 2021) ("Plaintiff does not allege that either Defendant in particular acted with deliberate indifference by transporting Plaintiff to the Oneida Police Station rather than the Upstate Emergency

Department. As such, Plaintiff is permitted to plead in the alternative that Defendants Clark and Slator failed to intervene in the alleged constitutional violation.").

Although Plaintiff's Complaint does not expressly include this specific cause of action, a liberal construction of Plaintiff's excessive force claims plausibly suggests a contention that one or more law enforcement officers failed to intervene to protect Plaintiff. Therefore, out of an abundance of caution and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment failure to intervene claim against Defendants Glynn, Dorchester, and Wells.

### 2. First Amendment Retaliation

"A plaintiff asserting a First Amendment retaliation claim must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.' " *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *Weilburg v. Rodgers*, No. 5:22-CV-435 (BKS/TWD), 2022 WL 2751619, at *4 (N.D.N.Y. July 14, 2022) (collecting cases). Plaintiff must provide more than mere conclusory allegations; she must allege facts that plausibly support an inference of the requisite causal connection between the protected speech and plaintiff's arrest. *See Grossi v. City of New York*, No. 08-CV-1083 (RRM/ALC), 2009 WL 4456307, at *7 (E.D.N.Y. Nov. 4, 2009) (collecting cases where insufficient facts alleged to render causal connection plausible), *rep't and rec. adopted*, 2009 WL 4456307 (E.D.N.Y. Nov. 30, 2009). Plaintiff also must plead and prove the absence of probable cause for the arrest unless she was arrested in circumstances where "otherwise similarly situated individuals not engaged in the same sort of protected speech" had not been arrested. *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019).

**\*7** Plaintiff alleges that Defendants "escalated force and arrest in response to Plaintiff's emotional outbursts and yelling, which are protected expressions." (Dkt. No. 1 at 5.) The protected speech covered by First Amendment includes "a significant amount of verbal criticism and challenge directed at police officers." *See City of Houston, Texas v. Hill*,

482 U.S. 451, 461 (1987); *Barkai v. Mendez*, 629 F. Supp. 3d 166, 198 (S.D.N.Y. 2022) (collecting cases).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment retaliation claim against Defendants Glynn, Dorchester, and Wells.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997). [5]

[5]  *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Although I have serious doubts about whether Plaintiff can replead to assert actionable claims that I recommend be

dismissed here, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that she be permitted leave to amend. If Plaintiff chooses to file an amended complaint, she should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*8  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendant Syracuse Police Department, [6] because it fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b); and it is further respectfully

[6]  Any repleading of this claim would need to address municipal liability as outlined in Section IV(A) herein.

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants Glynn, Dorchester, and Wells pursuant to (1) the Fourth Amendment asserting (a) Warrantless Entry, (b) False Arrest, (c) Malicious Prosecution, (d) Excessive Force, and (e) Failure to Intervene; and (2) the First Amendment asserting Retaliation; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Attachment

2026 WL 1328396

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**All Citations**

Slip Copy, 2026 WL 1328396

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3694215
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Jeremiah Folsom HERBERT, Plaintiff,
v.
Deputy Superintendent E. RACZKOWSKI, D.S.S. 7am to 3pm Tour Shift, Attica C.F.; Sergeant W. Tomporowski, 3pm to 11pm Tour Shift, Attica C.F.; Sergeant A.J. Holman, 3pm to 11pm Tour Shift, Attica C.F. (R.R.U. Unit); Correctional Officer Goodwin, 3pm to 11pm Tour Shift, A-Block Company, Attica C.F.; Correctional Officer J. Ellis, 3pm to 11pm Tour Shift, SHU/R.R.U. Unit, Attica C.F., Defendants.

24-CV-0485 (JLS)
|
Signed August 5, 2024

**Attorneys and Law Firms**

Jeremiah Folsom Herbert, Attica, NY, Pro Se.

### ORDER

JOHN L. SINATRA, JR., UNITED STATES DISTRICT JUDGE

**\*1** *Pro se* Plaintiff, Jeremiah Folsom Herbert, is a prisoner confined at the Attica Correctional Facility ("Attica"). He filed a Complaint alleging claims under 42 U.S.C. § 1983 against Defendants—including (1) failure to protect; (2) use of excessive force; (3) unsanitary cell conditions; (4) denial of food; (5) denial of medical care; (6) a false misbehavior report filed in retaliation and without due process; (7) other forms of retaliation for filing grievances; and (8) sexual assault. Dkt. 1. He also filed a motion seeking leave to proceed *in forma pauperis* and filed a signed authorization. Dkt. 7 and 8. Additionally, he moved for a temporary restraining order ("TRO") and preliminary injunction seeking, *inter alia*, an order (1) transferring him from Attica; (2) directing Defendants to stop their acts of abuse and physical harm; and (3) providing him with sanitary living conditions and medical attention for the injuries Defendants caused. Dkt. 9.

Plaintiff's claims alleging failure to protect, use of excessive force, and unsanitary cell conditions may proceed to service.

However, his claims alleging denial of food, denial of medical care, a false misbehavior report filed in retaliation and without due process, retaliation, and sexual assault will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, with leave to amend. Further, Plaintiff's motion for a TRO and preliminary injunction is denied without prejudice.

### DISCUSSION

This Court grants Plaintiff permission to proceed *in forma pauperis* because Plaintiff met the statutory requirements of 28 U.S.C. § 1915(a) and filed the required authorization. Dkt. 7 and 8. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), this Court must screen Plaintiff's complaint.

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)–(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). However, a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### I. THE COMPLAINT

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 54 of 71

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)
2024 WL 3694215

*Twombly*, dismissal of a *pro se* claim as insufficiently pled is appropriate only in the most unsustainable of cases.").

**\*2** Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, although a *pro se* complaint need not provide every detail in support of a claim, it must allege some facts that support the claim. *See id.* (concluding that the district court properly dismissed the *pro se* complaint under section 1915(e)(2) because the complaint did not meet the pleading standard in *Twombly* and *Iqbal*). And even *pro se* pleadings must meet the notice requirements under Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004), and "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff sued Defendants alleging that they violated his rights under the First, Eighth, and Fourteenth Amendments between March and May 2024, at Attica. Dkt. 1. The Complaint is long and repetitive but, liberally construed, alleges the following.[1]

[1]  In light of the procedural posture of this case—an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)—the recitation of facts is drawn exclusively from Plaintiff's Complaint, the contents of which must be accepted as true for purposes of this review. *See Erickson*, 551 U.S. at 93–94 (citing *Bell Atl. Corp.*, 550 U.S. at 555–56).

On March 10, 2024, Plaintiff sent a letter to Defendants Sergeant A.J. Holman ("Holman") and Deputy Superintendent of Security E. Raczkowski ("Raczkowski") regarding threats of violence towards him and issues he was having with known gang members. He asked to be transferred to a different housing unit. Dkt. 1, at 16, 20, 24, 46.[2] On April 18, 2024, inmates Nelson and Hardy threw milk and feces in Plaintiff's living quarters to provoke an altercation,

and Plaintiff informed Defendants Holman, Raczkowski, and Corrections Officer ("CO") Goodwin ("Goodwin") about what had occurred. *Id.* at 16. Later that day, Nelson and Hardy assaulted Plaintiff on A-Block 5-Company. *Id.* at 16, 20, and 22. Goodwin was working on the unit at the time. *Id.* at 24.

[2]  The pages referenced are to those generated by the Court's Case Management and Electronic Case Files System (CM/ECF).

Plaintiff was taken to the Erie County Medical Center ("ECMC") for X-rays and an M.R.I. He suffered bruises to his face, body, and head, and suffers from migraines, dizziness, and emotional distress. *Id.* at 23. Plaintiff alleges that Defendants Raczkowski, Goodwin, Holman, Sergeant Tomporowski ("Tomporowski"), and C.O. Ellis ("Ellis") exhibited deliberate indifference and failed to protect him from the assault. *Id.* at 24.

Following Plaintiff's return from ECMC, on April 19, 2024, Defendants Holman, Tomporowski, Raczkowski, Goodwin, and Ellis took Plaintiff to a cell in the Special Housing Unit ("SHU") and punched, kicked, and assaulted him on the way. Plaintiff was handcuffed and did not provoke the assault. *Id.* at 17, 23.

On April 20, 2024, Defendants Holman, Tomporowski, Raczkowski, Goodwin, and Ellis placed Plaintiff in SHU Cell C-E-18. The cell had no running water and contained black mold, feces, and mildew on the walls and floor. *Id.* at 17, 25–26, 28. He was also denied adequate showers, food and meals, and proper cell cleaning supplies. *Id.* He remained in this cell for over three weeks. *Id.* at 17.

**\*3** Plaintiff filed grievances on April 22, 26, and 28, 2024, complaining about "how E. Raczkowski, J. Ellis, Goodwin, A.J. Holmes, and Sgt. W. Tomporowski ... subject[ed] him to intentional harm, excessive force, and safety issues." *Id.* at 17,[3] 47–48, 59.[4] On May 2, 2024, upon Raczkowski's orders, Holman, Tomporowski, Goodwin, and Ellis dragged Plaintiff from SHU Cell C-E-18 headfirst and with handcuffs, and Ellis, Holman, and Tomporowski kicked him in the upper back. *Id.* at 18, 30. He was then re-housed in Cell B-N-6 in a Residential Rehabilitation Unit and was sexually assaulted during a strip search. *Id.* at 37. This cell had a broken sink and toilet, and was infested with bugs, insects, and black mold. *Id.* at 18, 28. Later that day, Plaintiff asked Ellis, Tomporowski, Holman, and Raczkowski for medical attention. *Id.* at 18. He was experiencing stomach and back pains and had difficulty

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 55 of 71
Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)
2024 WL 3694215

breathing. *Id.* His "pleas for help were indeed ignored." *Id.* Plaintiff claims he was assaulted because he filed grievances. *Id.*

3    Plaintiff's Complaint capitalizes many letters but not all. The Court removes the unnecessary capitalizations.

4    Plaintiff attaches several grievances and grievance documents to his Complaint (Dkt. 1, at 47–65), but it appears only a few of them relate to the failure to protect and excessive force claims alleged in the Complaint. *Id.* at 47–49, 59. Further, the grievance form attached (*id.* at 47), dated April 23, 2024, is entitled "Failure to Protect" but it does not provide any details related to the grievance and states, "See Attached." There is nothing attached. *Id.*

On May 3, 2024, Defendants Raczkowski, Ellis, Holman, Tomporowski, and Goodwin took Plaintiff to a room inside the SHU's Medical Unit, that did not have cameras, and punched him in the face and assaulted him. *Id.* at 30–33. Plaintiff suffered severe pain in his back and shoulder, and swelling to his wrist and eyes. *Id.* at 30, 33. On May 3 and 5, 2024, these same Defendants denied him adequate medical care for his injuries. *Id.* at 33.

On May 9, 2024, Goodwin, Holman, and Tomporowski, upon Raczkowski's orders, went to Plaintiff's cell, berated and chastised him, knocked him into the wall, dragged him out of his cell in handcuffs, and assaulted him. *Id.* at 37. He suffered injuries to his head, back, and nose and was bleeding from his anal area. *Id.*

Plaintiff alleges that, between March and May 2024, Defendants retaliated against him in several ways for filing grievances. *Id.* at 35–36. Defendants filed false misbehavior reports against him, which led to a 120-day period in SHU. *Id.* at 36. Additionally, he was subjected to excessive force and unsanitary cell conditions and denied adequate food, meals, showers, telephone access, and cell cleaning supplies. He was further denied medical treatment for several injuries and illnesses caused by the assaults and unsanitary cell conditions, including stomach pain, severe bleeding, chronic migraines, depression, post-traumatic stress disorder, and "excruciating" back pain. *Id.* at 41. Plaintiff seeks compensation and punitive damages. *Id.* at 42.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under section 1983, a plaintiff must allege the individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

### A. Failure to Protect

**\*4** Plaintiff alleges that Defendants failed to protect him from the assault by inmates Hardy and Nelson. Dkt. 1, at 16, 20, 22, 24. The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The assessment of whether the measures taken are reasonable turns on an analysis of two factors. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the officials must be shown to have demonstrated a deliberate indifference to the inmate's safety. *Id.* Deliberate indifference is measured subjectively, meaning,

> a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to [the] inmate['s] health or safety; the official must both be aware of facts from which

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 56 of 71

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)

2024 WL 3694215

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

Plaintiff alleges that he wrote to Raczkowski and Holman regarding threats of violence against him and "issues" he had with known gang members. He asked to be moved. Dkt. 1, at 16, 20, 46. He further alleges that after Nelson and Hardy threw milk and feces in his living quarters, he informed Holman, Raczkowski, and Goodwin about what had occurred. *Id.* at 16. Later that day, Nelson and Hardy assaulted him. *Id.* at 16, 20, and 22.

At this point in the litigation, and mindful of the Second Circuit's directives to construe *pro se* pleadings liberally, the Court determines that this claim may proceed to service against Defendants Raczkowski, Holman, and Goodwin.

### B. Use of Excessive Force

Plaintiff alleges that on several occasions—April 19 and 22, and May 2, 3 and 9, 2024—he was assaulted by Holman, Tomporowski, Goodwin, and Ellis and that Raczkowski ordered the assaults. Dkt. 1, at 17–18, 23, 25–26, 30–33, 37. He further alleges that he suffered several injuries from these assaults and was denied medical treatment by Defendants following the assaults. *Id.* at 30, 33.

It is well-settled that "the core judicial inquiry [for determining whether prison officials have violated the Eighth Amendment by using excessive physical force] is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

The objective component considers the "seriousness of the injury." *Id.*

Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary in a particular situation, 'or instead evinced such wantonness

with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'

*Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

"The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

The subjective component addresses whether the defendant possessed a "wanton" state of mind while engaging in the use of force.

In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response."

*\*5* *Id.* Thus, while the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force," a plaintiff may state a cognizable Eighth Amendment claim if "the use of force is ... of a sort repugnant to the conscience of mankind." *Id.* at 9–10 (internal quotation marks omitted).

Here, Plaintiff alleges that, between April and May 2024, Tomporowski, Holman, Goodwin, and Ellis, at the direction of Raczkowski, dragged him from his cell and kicked and punched him, while he was cuffed and without provocation. He suffered several injuries from these beatings. Based on these allegations, which are assumed true, Plaintiff's excessive force claims may proceed to service against each Defendant.

### C. Conditions of Confinement

Plaintiff claims he was twice moved to cells that were unsanitary. The first cell, C-E-18, in which he was housed for three weeks, contained black mold, feces and mildew on the walls and floors, was infested with insects and rats, and did not have running water. Dkt. 1, at 17, 25–26, 28. The second cell, B-N-9, had a broken sink and toilet, was smeared with feces, and contained insects and black mold. *Id.* at 28. He also was denied supplies to clean his cells. *Id.* at 26. He claims he suffered stomach pains, nausea, continuous migraines, and dizziness. *Id.* at 26, 28. Plaintiff also alleges that he was denied adequate showers and food. *Id.* at 17, 25–26, 35–36.

#### 1. Unsanitary Cell Conditions

To state a cognizable Eighth Amendment challenge to conditions of confinement, a plaintiff must plead both an objective element and a subjective element. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). The objective element is met if the plaintiff alleges conditions that objectively posed an unreasonable risk of serious damage to his health to deny him "the minimal civilized measure of life's necessities." *Id.* (internal quotation marks omitted). When considering these conditions, a court should "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

The subjective element requires a plaintiff to allege that the defendant acted with deliberate indifference regarding the risks posed by the condition. *Walker*, 717 F.3d at 125. The defendant must have known of the condition that posed an excessive risk to inmate health and chosen to disregard it. *Id.*; *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015) (summarizing Eighth Amendment standards and finding that the district court's dismissal of a claim alleging unsanitary conditions was a "constrained conception of the Eighth Amendment's protections against unsanitary conditions").

In *Willey*, the Second Circuit rejected "that there is any bright-line durational requirement for a viable unsanitary-conditions claim ... [n]or is there some minimal level of grotesquerie required ...." 801 F.3d at 68. "The severity of an exposure may be less quantifiable than its duration, but its qualitative offense to a prisoner's dignity should be given due consideration." *Id.* "Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the severity of an exposure, serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Id.* (citing *Hudson*, 503 U.S. at 4).

**\*6** Again, at this stage of the litigation and mindful of the Second Circuit's directive to construe *pro se* pleadings liberally, the unsanitary-conditions claim may proceed to service against each Defendant.

#### 2. Denial of Food

The Second Circuit has held that, "under certain circumstances[,] a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). Such a substantial deprivation creates an Eighth Amendment claim if it "presents an immediate danger to the inmate's health or well-being." *Chapdelaine. v. Keller*, No. 95–CV–1126 RSP/GLS, 1998 WL 357350, at \*12 (N.D.N.Y. Apr. 16, 1998). Plaintiff has made no allegations regarding the number of meals he was denied or the number of days he was denied food or meals; nor how the alleged denial of food affected his health. *Compare Barclay v. New York*, 477 F. Supp. 2d 546, 555 (N.D.N.Y. 2007) (finding at the summary judgment stage that denial of meals for two or three days did not state a claim where there was no evidence that the denial was malicious and no evidence to support plaintiff's claim he suffered "ill effects"), *with Williams v. Coughlin*, 875 F. Supp. 1004, 1012–13 (W.D.N.Y. 1995) (declining to dismiss a claim involving approximately a two-day denial of meals); *Hodge v. Ruperto*, 739 F. Supp. 873, 878 (S.D.N.Y. 1990) (finding a two-and-a-half-day deprivation of food and water egregious deprivation for a pretrial detainee).

Accordingly, this claim must be dismissed, but Plaintiff is granted leave to amend.

### D. Denial of Medical Care

Plaintiff asserts generally that he was denied medical care following the alleged assaults and at other times when he requested it. He also asserts several injuries or medical illnesses caused by the assaults or unsanitary cell conditions. Dkt. 1, at 30, 33, 35–36. To show that prison medical treatment was so inadequate as to amount to "cruel and unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that the defendant's actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

The deliberate indifference standard "incorporates both objective and subjective elements. The objective 'medical

Case 1:26-cv-00419-GTS-CBF     Document 4     Filed 06/24/26     Page 58 of 71

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)
2024 WL 3694215

need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 702). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187.

**\*7** Plaintiff's allegations, regarding the denial of medical care, are conclusory. He generally alleges that, at various unspecified times, he requested medical care or treatment following the alleged assaults, or after placement in the unsanitary cells, and that his requests were ignored. Dkt. 1, at 18, 30, 33. He claims that he suffered various injuries and symptoms, including stomach pains, neck and back pain, difficulty breathing, a broken nose, impaired vision to his right eye, and migraines. *Id.* at 18, 29, 31, 33, 36. While not discounting the nature of the injuries and illnesses alleged, Plaintiff's claims are too conclusory to state a plausible claim that Defendants were deliberately indifferent to his medical needs. Even assuming the injuries or illnesses are sufficiently serious to allege the objective element, he does not sufficiently assert how Defendants acted with sufficiently culpable states of mind. In other words, he does not adequately allege that Defendants had actual knowledge of his serious medical needs but were deliberately indifferent to them. *See Farmer*, 511 U.S. at 837; *Brock v. Wright*, 315 F.3d 158, 164–65 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith*, 316 F.3d at 184.

The Court, therefore, determines that Plaintiff has not sufficiently alleged that Defendants were deliberately indifferent to his injuries and illnesses. Alleging only that he requested medical care, and his requests were ignored, is not sufficient. Plaintiff will be permitted to amend this claim to allege how each Defendant, by their own actions, denied him medical care or treatment for the injuries or illnesses alleged.

**E. False Misbehavior Report**

At one point in the Complaint, Plaintiff asserts that false misbehavior reports were filed against him in retaliation for his grievances and that, as a result of the reports, he was sentenced to 120 days of solitary confinement in violation of his due process rights. Dkt. 1, at 35. He alleges generally that Defendants retaliated against him, but he does not allege who lodged the misbehavior reports against him or what process he was not afforded at any undiscussed disciplinary hearings. *Id.* He alleges only that, on April 19, 2024, he was placed inside SHU, by Defendants, until May 13, 2024, and was deprived of adequate food and showers, and suffered migraines and general pain from the assaults. *Id.* at 36.

"The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). There are "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey*, 801 F.3d at 63 (internal quotation marks omitted). In other words, "[a]llegations concerning a false misbehavior report are generally only cognizable when there are other allegations triggering a First Amendment retaliation claim or Fourteenth Amendment due process claim." *Edwards v. Annucci*, No. 9:19-CV-0254 (MAD/ATB), 2019 WL 3213523, at \*5 (N.D.N.Y. July 17, 2019).

While Plaintiff alleges that the false misbehavior reports were filed in retaliation for his grievances and he was denied due process, Dkt. 1, at 35–36, he fails to allege either a plausible retaliation or due process claim.

1. Retaliation

To state a First Amendment retaliation claim, under section 1983, "a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see*

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)

2024 WL 3694215

also *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). The Second Circuit has held that, in the prison context "adverse action" is defined objectively, as retaliatory conduct "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights ...." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). To prove the "causal connection" prong, the plaintiff "bears the burden of showing that ... the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

 **\*8** A plaintiff can show causal connection by alleging circumstantial evidence of retaliation such as "[t]emporal proximity between an inmate's [protected activity] and [the defendant's] disciplinary action," "evidence of prior good behavior," and statements by the defendant about the motive for the alleged retaliatory action. *Colon v. Coughlin*, 58 F.3d 865, 872–73 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases involving delays ranging from twelve days up to eight months between protected activity and adverse action where a causal inference could be drawn). While a period of four-to-five months might demonstrate sufficient temporal proximity, the Second Circuit has "consistently required some further evidence[, beyond temporal proximity,] of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (summary order).

The Second Circuit has cautioned that, because of the "ease with which claims of retaliation may be fabricated, [it] examine[s] prisoners' claims of retaliation with skepticism and particular care." *Colon*, 58 F.3d at 872, *abrogated on other grounds by Tangreti*, 983 F.3d at 616–18.

Plaintiff's retaliation claims are too conclusory to state a violation of the First Amendment. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone ...."), *overruled on other*

grounds by *Swierkiewicz*, 534 U.S. 506. While he alleges that he filed grievances as early as March 2024, which is protected conduct, *see Graham*, 89 F.3d at 80, and is close in time to the allegations of wrongful conduct, his allegations that the grievances were a substantial or motivating factor for the alleged assaults, denial of medical care, and unsanitary cell conditions are not supported by any facts. Without any non-conclusory allegations that the grievances and the wrongful conduct alleged are causally connected, his retaliation claims are little more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). Accordingly, Plaintiff does not state a plausible retaliation claim and, thus, his claim for a false misbehavior report based on retaliation fails. He, however, will be permitted to file an amended complaint.

2. Due Process

Plaintiff alleges that he served 120 days in solitary confinement as a result of the misbehavior reports. The Court determines that, at this stage in the litigation, Plaintiff has asserted a protected liberty interest. *See Palmer v. Richards*, 364 F.3d 60, 64–65 (2d Cir. 2004) ("Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required.") (internal quotation marks omitted). However, Plaintiff does not allege anything related to his hearing(s) and how he was denied due process at the hearing(s).

 **\*9** Once a plaintiff alleges a liberty interest, he is entitled to certain protections before being subjected to "special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974)). "[A]n inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citing to *Wolff*, 418 U.S. at 563–67).

Because Plaintiff alleges nothing related to his disciplinary hearing(s) or what due process protections were denied, he fails to allege that he was denied due process based on the

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 60 of 71

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)

2024 WL 3694215

false misbehavior report. Accordingly, his false misbehavior report and due process claims are dismissed, with leave to amend.

### F. Retaliation

Plaintiff alleges that he was subject to various forms of retaliation because he filed grievances as early as March 2024. As addressed above, he does not sufficiently allege that the grievances were a substantial or motivating factor for the assaults, denial of medical care, or conditions of confinement that he allegedly endured. Thus, this claim is dismissed, with leave to amend.

### G. Sexual Assault

Plaintiff alleges in wholly conclusory terms that on May 2, 2024, he was "the victim of sexual assault by" Tomporowski, Ellis, and Raczkowski during a strip search. Dkt. 1, at 37. He provides no further allegations regarding this assault. Allegations of sexual abuse or harassment can amount to a violation of a prisoner's right to be free from cruel and unusual punishment. Indeed, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015).

Here, Plaintiff alleges nothing to suggest that he can state a viable Eighth Amendment claim based on a sexual assault. Because Plaintiff is *pro* se, he is granted leave to amend the Complaint to assert, if possible, a plausible claim of sexual assault in violation of the Eighth Amendment.

## III. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

Plaintiff has moved for a TRO and preliminary injunction based on the allegations asserted in his Complaint. Dkt. 9. His motion asserts that, on several dates in April and May 2024, Defendants "put [his] life, health, and safety and welfare in serious danger." *Id.* at 1. He seeks an order pursuant to Fed. R. Civ. P. 65(a) directing Defendants to: (1) transfer him from Attica; (2) "stop[ ] acts of physical and mental abuse, brutality and torture, and inhumane conditions of confinement and treatment;" (3) "stop acts of abuse, assault and excessive force and injury upon [him], [providing] adequate safety protection from hands of danger ...;" (4) provide him medical care; and

(5) comply with the HALT Act, N.Y. Correct. Law § 137(6) and release him from solitary confinement. *Id.* at 2–3.

To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) that the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This same standard applies to motions for temporary restraining orders. *See, e.g., Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 484 (W.D.N.Y. 2018) (collecting cases). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted); *see also Bimbers Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 771 (W.D.N.Y. 2020) (stating that a temporary restraining order is "an extraordinary and drastic remedy; one not awarded as a matter of right or entitlement").

**\*10** The Second Circuit has defined "irreparable harm" as "certain and imminent harm for which a monetary award does not adequately compensate .... [O]nly harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113–14 (2d Cir. 2003). Courts view requests for injunctive relief against prison officials with "caution," *see Farmer*, 511 U.S. at 846–47, to avoid becoming increasingly "enmeshed in the minutiae of prison operations." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979).

While the Court certainly is concerned with Plaintiff's allegations of assault and other actions of Defendants, his unsupported allegations are not sufficient to grant the extraordinary relief requested. A movant seeking a preliminary injunction "must do more than merely set forth 'enough facts to state a claim to relief that is plausible on its face' " in order "to establish a clear or substantial likelihood of success on the merits." *Benitez v. King*, 298 F. Supp. 3d 530, 536 (W.D.N.Y. 2018) (quoting *Twombly*, 550 U.S. at 570) (citing *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957 (ADS) (AKT), 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) (noting that the standard required to prevail on a motion for a preliminary injunction "is higher than one to overcome a motion to dismiss")). In short, "[b]are allegations, without more, are insufficient for the issuance of

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 61 of 71

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)

2024 WL 3694215

a preliminary injunction." *Kadant, Inc. v. Seeley Mach., Inc.,* 244 F. Supp. 2d 19, 40 (N.D.N.Y. 2003) (internal quotation marks omitted).

Because the Complaint only sets forth enough facts to state claims to relief that are plausible on their face with respect to Plaintiff's failure to protect, excessive force, and unsanitary-cell conditions claims, Plaintiff has not met the "far more demanding" standard, *Benitez,* 298 F. Supp. 3d at 536, for demonstrating entitlement to injunctive relief. Therefore, his motion for a TRO and preliminary injunction is denied, without prejudice to a potential future motion properly supported with adequate proof.

### IV. LEAVE TO AMEND

Plaintiff has been granted leave to amend certain claims and the remaining claims will proceed to service upon the filing and screening of an amended complaint. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Because the Complaint is long and repetitive, Plaintiff is reminded that any amended complaint shall set forth his claims in "short and plain statement[s] ... showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the amended complaint, for each separate claim or act of misconduct alleged, shall specify (i) the alleged act of misconduct; (ii) the date or dates on which such misconduct took place; (iii) the name or names of each and every individual (Defendant) who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and (v) the nexus (connection) between such misconduct and Plaintiff's constitutional rights. Plaintiff may attach exhibits to his amended complaint, but they must be relevant to the allegations of the amended complaint and organized in such a way that the Court and Defendants can read and determine their relevance; the Court will not independently examine exhibits that Plaintiff does not specifically reference (by the exhibit's page number) in his amended complaint.

### CONCLUSION

 **\*11**  Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an authorization, his request to proceed *in forma pauperis* is granted. Dkt. 8. For the reasons set forth above, several of Plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless he files an amended complaint no later than **45 days from the date of this Decision and Order** in which

he includes the necessary allegations regarding the following claims: (1) denial of food; (2) denial of medical care; (3) a false misbehavior report filed in retaliation and without due process; (4) other forms of retaliation for filing grievances; and (5) sexual assault, as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all the allegations against each Defendant against whom the case is going forward, namely the failure to protect, excessive force, and unsanitary-cell conditions claims, so that the amended complaint may stand alone as the sole complaint in this action which Defendants must answer.

If Plaintiff fails to file an amended complaint as directed, the denial of food, denial of medical care, false misbehavior report filed in retaliation and without due process, retaliation, and sexual assault claims will be dismissed without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and service of the remaining claims on Defendants shall be directed.

Plaintiff's motion for a TRO and preliminary injunction is denied without prejudice.

### ORDER

In light of the foregoing,

IT HEREBY IS ORDERED, that Plaintiff's motion to proceed *in forma pauperis* (Dkt. 8) is granted; and it is further

ORDERED that Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 9) is denied without prejudice; and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint only as directed above [5] **no later than 45 days from the date of this Decision and Order**; and it is further

Case 1:26-cv-00419-GTS-CBF Document 4 Filed 06/24/26 Page 62 of 71

Herbert v. Raczkowski, Not Reported in Fed. Supp. (2024)
2024 WL 3694215

5    Plaintiff is reminded that he must also include in this amended complaint his failure to protect, excessive force, and unsanitary-cell conditions claims; because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties. Failure to include these claims in an amended complaint means that they are not preserved for service on Defendants. If Plaintiff chooses not to file an amended Complaint, these three claims will proceed to service against Defendants, but his other claims will be dismissed without leave to amend.

ORDERED that the Clerk of Court is directed to send to Plaintiff, with this order, a copy of the original Complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that in the event Plaintiff fails to file an amended complaint as directed above **no later than 45 days from the date of this Decision and Order**, the denial of food, denial of medical care, false misbehavior report filed in retaliation and without due process, other forms of retaliation for filing grievances, and sexual assault claims are dismissed pursuant to 28 U.S.C. §§ 1915(2)(2)(B) and 1915A without leave to amend and without further order of the Court; and it is further

**\*12** ORDERED that in the event Plaintiff has failed to file an amended complaint **no later than 45 days from the date of this Decision and Order**, the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the summons, Complaint, and this order upon Defendants E. Raczkowski, W. Tomporowski, A.J. Holman, Goodwin, and J. Ellis, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; 6 and it is further

6    Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have sixty days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)–(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within thirty days of receipt of the summons and complaint by mail pursuant to N.Y. C.P.L.R. § 312-a.

ORDERED that the Clerk of Court amend the caption to reflect the caption set forth in this order; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office, Michael.Russo@ag.ny.gov; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to answer the Complaint; and it is further

ORDERED that Plaintiff shall notify the Court in writing if his address changes. The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3694215

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 384066

2017 WL 384066
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Taheen HAYES, Plaintiff,
v.
T. DAHKLE, et al., Defendants.

9:16-CV-1368 (TJM/CFH)
|
Signed 01/26/2017
|
Filed 01/27/2017

**Attorneys and Law Firms**

TAHEEN HAYES, 05-A-3850, Clinton Correctional Facility,
P.O. Box 2000, Dannemora, NY 12929, Plaintiff Pro se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Taheen Hayes ("plaintiff") commenced this civil rights action asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). By Decision and Order filed on December 15, 2016 (Dkt. No. 5) (the "December Order"), this Court granted Plaintiff's IFP application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. On the basis of that review, the Court dismissed the following, without prejudice: (1) Eighth Amendment claims against defendants Superintendent Daniel F. Martuscello ("Martuscello"), Deputy of Security, Raymond Shanley ("Shanley"), Inmate Counselor J. Iarrusso ("Iarrusso"), Correction Officer T. Dahkle ("Dahkle"), Correction Officer Jason A. Meier ("Meier"), Correction Officer Gregory E. Langtry ("Langtry"), Correction Officer Stephen A. Bence ("Bence") and Correction Officer E. Coon ("Coon"); (2) supervisory claims against Martuscello and Shanley; (3) retaliation claim against Dahkle; and (4) constitutional claims against Iarrusso for failing to process grievances. Dkt. No. 5 at 20. Plaintiff was given the opportunity to file an amended complaint to assert any claim that was dismissed without prejudice. *See id.* at 20, n. 12. The Court ordered defendant Correction Officer K. Hoffman

("Hoffman"), Meier, Langtry, Bence, and Coon to respond to plaintiff's retaliation claims. [1] *See id.* at 20.

[1] Defendants have not filed an answer.

Presently before the Court is plaintiff's amended complaint. Dkt. No. 8 ("Am. Compl.").

**II. LEGAL STANDARD**

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) was discussed at length in the December Order and it will not be restated in this Decision and Order. *See* Dkt. No. 5 at 2-4. The Court will construe the allegations in plaintiff's amended complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to a less stringent standards than formal pleadings drafted by lawyers.").

**III. SUMMARY OF AMENDED COMPLAINT** [2]

[2] Plaintiff annexed exhibits to the amended complaint. Dkt. No. 8-1. To the extent that the exhibits attached to the amended complaint are relevant to the incidents in the amended complaint, the Court will consider the documents. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (holding that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference). In addition, plaintiff's original complaint included exhibits. Dkt. No. 1-1. Plaintiff incorporated, by reference, the same exhibits attached to the original complaint, but failed to actually attach the exhibits to the amended complaint. "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint." *Wellington v. Langendorf,* No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To require plaintiff to file an amended complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Alexander v. U.S.,* No. 13-CV-678, 2013 WL 4014539, at *4 (N.D. Cal. Aug. 5, 2013). Because plaintiff is a pro se plaintiff, the

Court will consider the exhibits and documentation attached to the original complaint as incorporated by reference in the amended complaint.

**\*2** Plaintiff, an inmate currently confined at Clinton Correctional Facility ("Clinton C.F."), asserts claims related to his confinement at Coxsackie Correctional Facility ("Coxsackie C.F."). *See* Am. Compl, *generally.* On March 2, 2016, plaintiff filed a grievance (CX-18859-016), related to his dreadlocks.[3] *See* Dkt. No. 1-1 at 2. On April 15, 2016, at 10:30 a.m., Dahkle ordered plaintiff to step out of his cell, in the D-1 Gallery, for a search. *See* Am. Compl. at 4. Plaintiff complied with Dahkle's order to turn and face the wall for a pat frisk. *See id.* During the pat frisk, Dahkle pressed his genitals against plaintiff's buttocks and ran his hands into the interior portion of plaintiff's buttocks. *See id.* During the cell search, Dahkle asked plaintiff sexually explicit questions related to plaintiff's gender identification including, "do you consider yourself a male or a female?" *See id.* at 4-5. Later that day, plaintiff reported the incident on the PREA hotline. *See* Am. Compl. at 5.

[3] On March 31, 2016, the grievance was resolved after a hearing. Dkt. No. 1-1 at 2. The record does not contain any information related to the grievance including the substance of the grievance or the identity of the correctional officer(s) involved in the complained of incident(s).

On April 17, 2016, plaintiff filed a grievance (CX-18908-016) charging Dahkle with sexual assault.[4] *See* Am. Compl. at 5; Dkt. No. 1-1 at 2. On April 18, 2016, plaintiff reported the incident to Martuscello while the Superintendent was making rounds in the cafeteria. *See* Am. Compl. at 5. Martuscello took plaintiff's identification card and advised, "someone will be coming to see you soon." *See id.*

[4] In the amended complaint, plaintiff claims that he filed CX-18908-016 on April 17, 2016. *See* Am. Compl. at 5. Documentation annexed to the original complaint reveals that the grievance was filed on April 19, 2016. *See* Dkt. No. 1-1 at 2.

On May 9, 2016, plaintiff was transferred to C-1 Housing unit. *See* Am. Compl. at 5. Dahkle was working in that unit and immediately began verbally harassing plaintiff. *See id.* at 5-6. Dahkle made sexually explicit statements, called plaintiff derogatory names, and told plaintiff "do not unpack your [expletive] .. if I have to [expletive] you up myself, you're leaving this block." *See id.* at 6. At approximately 3:15

p.m., plaintiff was summoned to the Captain's office for an interview with Martuscello and Shanley. *See id.* at 6. Plaintiff told defendants about his most recent encounter with Dahkle and expressed his fear of retaliation. *See* Am. Compl. at 6. Martuscello and Shanley "laugh[ed] at [plaintiff]." *See id.* at 6-7.

On May 14, 2016, plaintiff was housed in the A-3 housing unit. *See* Am. Compl. at 7. When plaintiff left his cell for callouts, recreation, or meals, he came into contact with Dahkle, who worked the "3 to 7 pm" shift in A-2. *See id.* Dahkle continued to verbally sexually harass plaintiff in the presence of other inmates and officers. *See id.* Plaintiff wrote to Martuscello, Shanley, and Phyllis Harrison-Ross, M.D. ("Harrison-Ross"), the Commissioner of the New York State Commission of Correction[5]. *See id.*

[5] Harrison-Ross is not a defendant herein.

On May 15, 2016, Hoffman issued a misbehavior report charging plaintiff with creating a disturbance, failing to follow a direct order, harassment, lying, and threats. *See* Am. Compl. at 7; Dkt. No. 8-1 at 4. Hoffman reported that on May 15, 2016, at approximately 6:31 p.m., he:

> ... heard yelling on the tier. I started to make a round and could overhear inmate Hayes in A-31 cell. Yelling [sic] out his cell window to another inmate saying, "yo all you gotta do is call that PREA Hotline and say the C.O. touched your [expletive] doing a frisk or something, doesn't matter what you say. Just make something up, trust me, it works all the time." I then approached his cell door and gave him a direct order to stop yelling out of his window to which he replied "I wasn't." I then told him that I'd been listening to his conversation and gave him a second direct order to stop yelling, to which he replied "man, [expletive], I will put you [expletive] on paper too." Inmate Hayes then sat on his bed with no further incident. Area supervisor notified.

**\*3** Dkt. No. 8-1 at 4.

On May 16, 2016, plaintiff was transferred to F-3-36 cell and placed in keeplock confinement pending a disciplinary hearing related to the misbehavior report. *See* Am. Compl. at 8. At approximately 4:30 p.m., Meier came to plaintiff's cell and asked plaintiff why he was in keeplock. *See id.* Plaintiff explained that Hoffman issued a retaliatory misbehavior report. *See id.* Meier called plaintiff a "[expletive] liar" and told him to "lock in." *See id.* At approximately 5:30 p.m., plaintiff was directed to the front of the company

for a keeplock admission interview. *See* Am. Compl. at 8. A registered nurse asked plaintiff, in Meier's presence, whether plaintiff was sexually abused at Coxsackie C.F. and plaintiff responded "yes." *See id.* at 9. Meier became agitated and threatened plaintiff while yelling expletives and slurs at plaintiff. *See id.* The nurse asked if any sexual incident occurred within the last forty-eight hours and plaintiff responded, "no." *See id.* The nurse "cleared" plaintiff and left. *See* Am. Compl. at 9.

After the nurse left, Meier opened "the cage" and "stormed in, jumping in [plaintiff's] face." *See* Am. Compl. 9. Meier threatened plaintiff with bodily harm and was so agitated that he spit on plaintiff's face. *See id.* Meier accused plaintiff of "get[ting] C.O.'s fired." *See* Am. Compl. at 9. Plaintiff complied with Meier's order to "lock in." *See id.* at 10. Approximately thirty minutes later, plaintiff kicked his cell door to get the attention of the supervising officer. *See id.* Plaintiff asked to speak to a sergeant but his request was denied. *See id.* As a result of the incident, Meier issued a misbehavior report. *See* Am. Compl. at 10. On May 17, 2016, plaintiff was escorted to the Special Housing Unit ("SHU"). *See id.*

On May 19, 2016, plaintiff received a memorandum from R. Paquette-Monthie ("Paquette-Monthie"), LMSW-Counselor regarding his "concerns." [6] *See* Dkt. No. 8-1 at 13. Paquette-Monthie informed plaintiff that she communicated plaintiff's concerns to the Superintendent and the "SORC." [7] *See id.* Paquette-Monthie told plaintiff that Martuscello was "looking into" the complaints and advised that "it is being handled." *See id.* The counselor urged plaintiff to stop filing tickets and to use his SHU time, away from the offending individual, to "relax" or he will "end up with a lot of SHU time." *See id.*

[6]     Paquette-Monthie is not a defendant herein.

[7]     SORC is an abbreviation for the Supervising Offender Rehabilitation Coordinator. *See* http://www.doccs.ny.gov (last visited Jan. 26, 2017).

On May 23, 2016, while Martuscello and Shanley were making rounds in the SHU, plaintiff expressed his concerns regarding his safety and Meier's threats. *See* Am. Compl. at 10. Defendants "laughed and joked" and told plaintiff to address the issue during his disciplinary hearing. *See id.* at 10-11.

On May 24, 2016, plaintiff attended his Tier III disciplinary hearing related to Meier's misbehavior report. *See* Am. Compl. at 11. Plaintiff was found "not guilty" of threats and violent conduct but guilty of disobeying a direct order and creating a disturbance. *See id.*

**\*4** On May 24, 2016, plaintiff received a letter from Harrison-Ross, dated May 17, 2016, that advised plaintiff that his complaints regarding retaliation at Coxsackie C.F. and accusations that Martuscello and Shanley failed to protect plaintiff, were referred to the Office of Special Investigations for review. *See* Am. Compl. at 11; Dkt. No. 8-1 at 2.

On June 10, 2016, plaintiff was released from the SHU. *See* Am. Compl. at 12. Plaintiff was advised that he would no longer be employed as a messhall worker. *See id.* Plaintiff subsequently filed a grievance (CX-19054-016) for having his program revoked. [8] *See id.*

[8]     This grievance was filed on July 25, 2016. See Dkt. No. 1-1 at 2.

On June 11, 2016, plaintiff was summoned to the Captain's office for an interview with Martuscello and Shanley. *See* Am. Compl. at 13. When plaintiff arrived, Martuscello yelled at plaintiff about his complaints and stated that "anything can happen" to plaintiff. *See id.* Martuscello threatened to return plaintiff to the SHU if he continued to complain. *See id.*

On June 15, 2016, plaintiff filed a formal complaint regarding his meeting with Martuscello and Shanley. *See* Am. Compl. at 13; Dkt. No. 8-1 at 17. On June 20, 2016, plaintiff was transferred to B-2, Division 6 cell. *See* Am. Compl. at 14. Hoffman was waiting for plaintiff in the gallery and threatened plaintiff. *See id.* Hoffman told plaintiff not to get "comfortable" because "you mess with one of us (C.O.'s) you got to deal with all of us." *See id.* On June 17, 2016, plaintiff filed a grievance (CX 18983-016) related to the retaliatory conduct and harassment by Hoffman and Meier. *See* Am. Compl. at 12; Dkt. No. 1-1 at 2.

On June 24, 2016, plaintiff filed a petition pursuant to New York Civil Service Law § 75 charging Dahkle and Hoffman with, *inter alia*, threats of physical abuse and harassment. *See* Am. Compl. at 14; Dkt. No. 8-1 at 20. Plaintiff served a copy upon the Acting DOCCS Commissioner, the Office of Special Investigation, and Martuscello. *See* Am. Compl. at 14.

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 66 of 71

Hayes v. Dahkle, Not Reported in Fed. Supp. (2017)
2017 WL 384066

On June 29, 2016, plaintiff received a letter from Karen Bellamy ("Bellamy") [9] in response to plaintiff's June 15, 2016 correspondence to Acting DOCCS Commissioner Anthony Annucci. *See* Dkt. No. 8-1 at 16. Plaintiff was advised that his grievance, CX-18983-16, alleging retaliation, was pending with the Superintendent. [10] *See id.* A copy of the letter was sent to Martuscello. *See id.*

[9]   Bellamy is not a defendant herein.

[10]   On August 1, 2016 and August 11, 2016, plaintiff received a second and third letter from Bellamy advising that CX-18983-16 was still pending with the Superintendent. *See* Dkt. No. 8-1 at 10-11. Copies of the aforementioned letters were forwarded to Martuscello. *See id.*

On July 5, 2016, plaintiff received a letter from Deputy Counsel Nancy Heywood regarding his Civil Service petition. *See* Dkt. No. 8-1 at 30. Plaintiff was advised that the New York Civil Service Law did not authorize an inmate to initiate disciplinary proceedings against a DOCCS employee. *See id.* Plaintiff was advised to direct his complaints to the Inmate Grievance Office at his facility. *See id.*

On July 7, 2016, plaintiff was summoned to the Inmate Grievance Office. *See* Am. Compl. at 14. Iarrusso advised that "some higher-up official in Albany" was investigating plaintiff's grievances and complaints against Dahkle. *See id.* Plaintiff discussed the events that had transpired between February 26, 2016 until July 7, 2016. *See id.* Iarrusso advised plaintiff that if he ceased filing complaints, "all of this would go away." *See* Am. Compl. at 15. Thirty minutes later, Hoffman banged on plaintiff's cell door and continued to harass plaintiff for filing grievances. *See id.* He also told plaintiff that "Dahkle said hi." *See id.*

 **\*5**  On July 12, 2016, plaintiff was summoned to the Inmate Grievance Office for a hearing regarding his complaints about SHU mail. *See* Am. Compl. at 15. The hearing was conducted by Iarrusso and Meier. *See* Am. Compl. at 15. Plaintiff claimed that his grievances about Martuscello and Shanley had not been filed despite the fact that he wrote the grievances one month prior. *See id.* at 15-16. Iarrusso angrily responded, "I don't care about your grievance" and admitted that he destroyed the grievance. *See id.* at 16.

On July 13, 2016, plaintiff filed a complaint against Iarrusso with Bellamy and requested an investigation into his claims

of misconduct and retaliation. *See* Am. Compl. at 16. The complaint was received on July 27, 2016. *See* Dkt. No. 8-1 at 32-34.

On July 18, 2016, plaintiff filed a grievance (CX-19053-016) charging Iarrusso with misconduct and retaliation. [11] *See* Am. Compl. at 16. On August 16, 2016, a hearing was held related to the grievance. *See* Dkt. No. 8-1 at 35. The IGRC issued a response indicating that they were "deadlocked" but the committee noted that Iarrusso admitted that he destroyed plaintiff's grievance and conceded that he made statements to the effect that he would not file grievances against the Superintendent. *See id.* On September 17, 2016, Martuscello issued a decision accepting plaintiff's grievance, "in part." *See id.* at 36.

[11]   Documentation related to this grievance indicates that it was filed on July 25, 2016. See Dkt. No. 8-1 at 36.

On July 30, 2016, plaintiff was escorted to Unit F-3, for keeplock confinement due to another misbehavior report. *See* Am. Compl. at 17. Meier opened the door and called plaintiff a derogatory name. *See id.* Plaintiff was directed to enter the block and go to his cell. *See id.* As plaintiff walked towards his cell, with his hands in his pocket, Meier "bear hugged" him from behind. *See id.* Meier locked plaintiff's arms at his waist, lifted him into the air, and slammed him onto the floor. *See* Am. Compl. at 17. Plaintiff was semiconscious and dazed. *See id.* Meier jumped onto plaintiff's back and repeatedly punched plaintiff, with closed fists, in his back, head, face, and neck. See Am. Compl. at 17. Langtry ran over and repeatedly stomped on plaintiff's head. *See id.* The response team, including Bence and Coon, arrived and plaintiff was beaten, kicked, and punched. *See id.* Plaintiff's hands were cuffed behind his back during the assault. *See id.* Meier twisted plaintiff's wrists and threatened to break them. *See* Am. Compl. at 18. Plaintiff was lifted in the air, by the handcuffs, and thrown into the wall. *See id.* Plaintiff's face and body "bounced" off of the concrete wall. *See id.* Meier grabbed the back of plaintiff's head, holding tightly to plaintiff's dreadlocks, and slammed plaintiff's face into the wall. *See id.* Meier told plaintiff to stay on the wall. See Am. Compl. at 18. Plaintiff's head was bleeding and "split open." *See id.* Langtry, Coon, and Bence continued to assault plaintiff using their knees to "pound" plaintiff's legs and thighs. *See id.* Defendants also punched plaintiff in his arms, back and ribs. *See id.*

Hayes v. Dahkle, Not Reported in Fed. Supp. (2017)
2017 WL 384066

Plaintiff was escorted to the medical unit and transported to Albany Medical Center for treatment. *See* Am. Compl. at 18. On August 9, 2016, Plaintiff filed a grievance (CX-19094-16) related to the incident. *See id*; Dkt. No. 1-1 at 2.

On August 12, 2016, Bellamy acknowledged receipt of a complaint involving the assault. *See* Dkt. No. 8-1 at 41. The complaint was assigned grievance number, CX-19094-16, and plaintiff was advised that the grievance was pending with the Superintendent. *See id.* A copy of Bellamy's letter was sent to Martuscello. *See id.* In a second letter, also dated August 12, 2016, Bellamy advised that CX-19053-16 and CX-19054-16 regarding the grievance process and plaintiff's "program change" were pending for IGRC hearings. *See* Dkt. No. 8-1 at 8.

**\*6** Construed liberally, the amended complaint contains the following: (1) Eighth Amendment claims related to sexual assault and/or abuse against Dahkle; (2) Eighth Amendment excessive force claims against Meier, Langtry, Bence, and Coon; (3) retaliation claims against Dahkle, Hoffman, Meier, Langtry, Bence, Coon, Iarrusso, and Martuscello; (4) claim that Iarrusso violated DOCCS Directives when he discarded plaintiff's grievance; and (5) supervisory claims against Martuscello and Shanley. *See* Am. Compl, *generally.*

### IV. ANALYSIS

#### A. Previous Claims
As a result of the review of the original complaint, the Court held that the following claims required a response: (1) retaliation claims against Hoffman related to the misbehavior report; and (2) retaliation claims against Meier, Langtry, Bence, and Coon related to the use of excessive force. These claims are repeated and realleged in the amended complaint and thus, survive review as well.

#### B. Eighth Amendment Claims
The law related to the Eighth Amendment was discussed in the December Order and will not be restated herein. *See* Dkt. No. 5 at 9-13.

#### 1. Sexual Harassment/Abuse

In the December Order, the Court dismissed plaintiff's Eighth Amendment claim against Dahkle holding:

Here, plaintiff complains of one instance of verbal sexual harassment by Dahkle. *See* Compl. at 6. Plaintiff does not provide any specific facts related to the incident and does not contend that he was touched or physically harmed in any manner. As discussed *supra*, allegations of verbal harassment are insufficient to support a 1983 claim.

Dkt. No. 5 at 11.

In the amended complaint, plaintiff asserts new facts related to the April 15, 2016 incident with Dahkle and contends that the sexual assault occurred during a pat frisk. *See* Am. Compl. at 4. "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford v. Cuomo*, 796 F.3d 252, 257–58 (2d Cir. 2015). Here, plaintiff claims that the search was conducted to humiliate and intimidate him. *See* Am. Compl. at 4. Plaintiff alleges that Dahkle questioned plaintiff's "gender identity" and made sexually explicit statements regarding plaintiff's sexual preferences. *See id.* at 4-5.

At this juncture, the Court finds that plaintiff's Eighth Amendment claim against Dahkle survives sua sponte review and requires a responsive pleading. *See Allah v. Morrison*, No. 14-CV-6735, 2016 WL 4017340, at \*3-4 (W.D.N.Y. July 22, 2016) (holding that alleged taunts including, "you know what I want" suggest that the defendant's conduct was "designed to humiliate [the plaintiff], gratify herself, or both."). In so ruling, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Excessive Force

In the December Order, the Court dismissed plaintiff's Eighth Amendment excessive force claims against Meier, Langtry, Bence, and Coon holding:

Here, plaintiff summarily states that Meier, Langtry, Bence, and Coon "subjected [him] to assault and battery." *See* Compl. at 8. Plaintiff has failed to provide any further facts or information with regard to the use of force. While plaintiff claims that he was hospitalized and received stitches as a result of the altercation, *see* Compl. at 8, the vague allegations in the complaint do not plausibly suggest that defendants attacked plaintiff with malice. *See Green v. McLaughlin*, 480 Fed.Appx. 44, 49 (2d Cir. 2012) (reasoning that while the plaintiff characterized the encounter as an "attack", he failed to allege facts support the inference that the defendants were malicious or sadistic). Consequently, plaintiff's excessive force claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

**\*7** Dkt. No. 5 at 12-13.

In the amended complaint, plaintiff identifies the individuals involved in the assaults, the time, date, location of the incidents, and describes the injuries allegedly sustained as a result of the incidents. *See* Am. Compl. at 17-18. Plaintiff also alleges facts suggesting that the use of force was "malicious and sadistic." *See id*. Accordingly, the Court finds that plaintiff's Eighth Amendment claims against Meier, Langtry, Bence, and Coon survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### C. Retaliation

The law related to First Amendment retaliation claims was discussed in the December Order and will not be restated herein. *See* Dkt. No. 5 at 13-14. In the amended complaint, plaintiff reasserts his original retaliation claims against Dahkle, Hoffman, Meier, Langtry, Bence, and Coon and asserts new retaliation claims against Dahkle, Hoffman, Meier, and Iarrusso.

### 1. Dahkle

In the December Order, the Court dismissed plaintiff's retaliation claims against Dahkle and reasoned:

> Plaintiff claims that Dahkle sexually harassed him in retaliation for

plaintiff's grievances against him. *See* Compl. at 6. Verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific. *See Ford v. Palmer*, 539 Fed.Appx. 5 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances). Here, the complaint lacks specific facts related to the context in which the threat was made, the substance of the threat, and how many times plaintiff was threatened. As presently plead, plaintiff has not sufficiently plead that he suffered any adverse action to support a plausible retaliation claim against Dahkle.

Dkt. No. 5 at 14-15.

In the amended complaint, plaintiff alleges that Dahkle sexually assaulted him on April 15, 2016 in retaliation for filing a grievance against him related to plaintiff's dreadlocks. *See* Am. Compl. at 4. As presently plead, the amended complaint does not contain information suggesting that Dahkle was personally involved with plaintiff's March 2016 grievance related to his dreadlocks. The amended complaint lacks facts suggesting that Dahkle was even aware of this grievance. *See Faulk v. Fischer,* 545 Fed.Appx. 56, 59 (2d Cir. 2013) (holding that the plaintiff failed to produce evidence suggesting that the defendants were "motivated by, or even aware of," his grievance); *see also Davidson v. Talbot*, No. 01-CV-473 (RFT), 2005 WL 928620, at \*16 (N.D.N.Y. March 31, 2005) (finding that the plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the strength or validity of such claim."); *see Guillory v. Haywood*, No. 13-CV-1564 (MAD/ TWD), 2015 WL 268933, at \*23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred). As plaintiff has not sufficiently alleged a causal connection between any protected activity and retaliatory conduct, plaintiff has not stated a plausible claim for retaliation against Dahkle in violation of the First

Case 1:26-cv-00419-GTS-CBF    Document 4    Filed 06/24/26    Page 69 of 71

Hayes v. Dahkle, Not Reported in Fed. Supp. (2017)
2017 WL 384066

Amendment, related to the April 2016 incident, and this claim is dismissed.

**\*8** A different conclusion is reached however, with respect to plaintiff's retaliation claim against Dahkle related to threats. Plaintiff claims that Dahkle threatened him on May 9, 2016 in retaliation for filing a grievance related to the April 15, 2016 incident. *See* Am. Compl. at 5-6. "[S]ome verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); *Barrington v. New York*, 806 F.Supp.2d 730, 746 (S.D.N.Y. 2011) (holding that verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific). Whether threats constitute adverse action in a particular case is dependent upon the specificity of the threat and the context in which it was made. *Compare Hepworth v. Suffolk Cnty.*, No. 02-CV-6473, 2006 W L 2844408, at \*8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) *with Bartley v. Collins*, No. 05-CV-10161, 2006 WL 1289256, at \*6 (S.D.N.Y. May 10, 2006) (threats such as "we are going to get you, you better drop the suit," do not rise to the level of adverse action). At this juncture, the Court finds that plaintiff has sufficiently alleged a retaliation claim against Dahkle, based upon the threats in May 2016, to require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

**2. Meier, Hoffman, and Martuscello**

Plaintiff alleges that Meier and Hoffman threatened him on May 16, 2016, June 20, 2016, and July 7, 2016 in retaliation for plaintiff's April 19, 2016 grievance against Dahkle. *See* Am. Compl. at 14. For the reasons set forth in Part IV(C)(1), *supra*, plaintiff's retaliation claims against Meier and Hoffman survive initial review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

Plaintiff also claims that during his June 11, 2016 interview, Martuscello threatened him in retaliation for filing grievances and stated, "if [you] continue to complain, anything can happen to [you]." *See* Am. Compl. at 13. Martuscello threatened to return plaintif f to the SHU if he continued to complain. *See* Am. Compl. at 13. Plaintiff's retaliation

claim against Martuscello survives initial review and requires a response. *See Hill v. Laird*, No. 06-CV-0126, 2014 W L 1315226, at \*8 (E.D.N.Y. Mar. 31, 2014) (holding that the threat to file false disciplinary reports to keep the plaintiff in the SHU, may constitute an adverse action). In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

**3. Iarrusso**

Plaintiff claims that Iarrusso retaliated against him when he discarded his grievance against Martuscello and Shanley. *See* Am. Compl. at 15-16. "[T]he intentional destruction of grievances is sufficient to allege a claim of retaliation." *Brown v. Bascomb*, No. 9:05-CV-1466 (NAM), 2008 WL 4283367, at \*6 (N.D.N.Y. Sept. 16, 2008) (citing *Soto v. Lacavino*, No. 01-CV-5850, 2003 W L 2128172 at \*2 (S.D.N.Y. June 04, 2003)). Accordingly, plaintiff has asserted a potential retaliation claim cognizable under § 1983 against Iarrusso. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

**D. Violation of DOCCS Directive**

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, \*6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). The failure to follow a DOCCS Directive does not give rise to a § 1983 claim. *See Sanders v. Gifford*, No. 11-CV-0326 (LEK/RFT), 2014 WL 5662775, at \*4 (N.D.N.Y. Nov. 4, 2014). This claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted. [12] *See McAllister v. Call*, No. 10-CV-610 (FJS/CFH), 2014 WL 5475293, at \*11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.").

[12] The amended complaint also includes a claim that Iarrusso violated his constitutional rights when he discarded plaintiff's grievance. *See* Am. Compl. at 16. In the December Order, the Court dismissed this claim holding that, "[p]laintiff does not have

a constitutional right to file a grievance." *See* Dkt. No. 5 at 16.

### E. Supervisory Claims

**\*9** The law related to personal involvement and supervisory officials was discussed in the December Order and will not be restated herein. *See* Dkt. No. 5 at 16-17. In the December Order, the Court dismissed plaintiff's supervisory claims against Martuscello and Shanley holding:

> ... plaintiff has failed to establish that Martuscello and Shanley were personally involved in any constitutional deprivation. Plaintiff claims that he "repeatedly notified" Shanley and Martuscello that he was being sexually harassed. *See* Compl. at 8. While plaintiff refers generally to "notifications," plaintiff failed to plead any facts establishing when he notified defendants, where he sent his notification, by what means his notifications were forwarded or what response he received. Without more, the allegations are not enough to allege personal involvement in any constitutional deprivation. *See Bridgewater*, 698 F.Supp.2d at 359; *Guillory v. Cuomo*, 616 Fed.Appx. 12, 14 (2d Cir. 2015) (summary order).

Dkt. No. 5 at 18-19.

In the amended complaint, plaintiff supports his claim that Martuscello and Shanley were personally involved in the alleged constitutional violations with facts including the dates and times that he spoke to defendants, either during rounds or interviews. *See* Am. Compl. at 5-7; 10-11, 13. Plaintiff also annexed copies of documentation suggesting that Martuscello and Shanley were aware of the alleged unconstitutional conduct. *See* Dkt. No. 8-1 at 13, 28, 36, 41. At this juncture, the Court finds that plaintiff's supervisory claims against Martuscello and Shanley survive sua sponte review and require a response. *See Lewis v. Wallace*, No. 9:11-CV-0867(DNH/DEP), 2013 W L 1566557, at \*5 (N.D.N.Y. Feb. 22, 2013) (collecting cases) *report and recommendation adopted*, No. 9:11-CV-0867(DNH/DEP), 2013 WL 1566555

(N.D.N.Y. Apr. 12, 2013) ("[C]ourts in this Circuit have held that personal involvement may be found where a supervisor receives, reviews, and responds to a plaintiff's grievance."). In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that the amended complaint (Dkt. No. 8), and all exhibits annexed (Dkt. Nos.1-1 and 8-1) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court is directed to create a new docket entry for the amended complaint; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to include Dahkle, Martuscello, Shanley and Iarrusso as defendants herein; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's retaliation claim against Dahkle related to the alleged sexual assault in April 2016; and (2) plaintiff's claim that Iarrusso violated his constitutional rights when he failed to follow DOCCS Directives; and it is further

**ORDERED**, that the following claims survive this Court's initial review and require a response: (1) Eighth Amendment claims against Dahkle related to the April 15, 2016 incident; (2) Eighth Amendment excessive force claims against Meier, Bence, Coon, and Langtry; (3) First Amendment retaliation claims against Dahkle, Hoffman, Meier, Bence, Coon, Langtry, Iarrusso, and Martuscello; and (4) supervisory claims against Martuscello and Shanley; and it is further

**\*10 ORDERED**, that a response to the amended complaint be filed by defendants Hoffman, Meier, Bence, and Coon or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk shall issue summonses for remaining defendants, Dahkle, Iarrusso, Martuscello, Langtry, and Shanley and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy

Case 1:26-cv-00419-GTS-CBF   Document 4   Filed 06/24/26   Page 71 of 71

Hayes v. Dahkle, Not Reported in Fed. Supp. (2017)

2017 WL 384066

of the summonses and amended complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the amended complaint be filed by defendants as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office

for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in w riting, of any change in his address; their failure to do so will result in the dismissal of his action;** and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 384066

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.